IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 11 C 5158 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John J. Tharp |
| | ) | |
| ROBERT S. LUCE, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff United States of America filed suit against Defendant Robert S. Luce, alleging that Luce made numerous false statements to the United States Department of Housing and Urban Development ("HUD") and the Federal Housing Administration ("FHA") in connection with the origination of FHA-insured loans in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a. The Government's complaint seeks treble damages and civil penalties under the FCA (Counts I & II), and civil penalties under FIRREA (Count III). Luce moves to dismiss the complaint, arguing that the statements at issue "did not apply" to him. Luce also moves to dismiss claims premised on loans that are not in default and claims premised on statements made before Congress included false statements to the FHA as a basis for liability under FIRREA. For the reasons set forth below, Defendant's Motion to Dismiss is denied.

## BACKGROUND[1]

HUD, through the FHA, is authorized pursuant to Section 203(b) of the National Housing Act, 12 U.S.C. § 1709, to insure lenders against losses on mortgage loans to homebuyers. In order to be eligible for insurance, loans must be made and held by an approved mortgagee. 12 U.S.C. § 1709(b)(1)[2]. Under HUD's mortgage insurance program, if a homeowner fails to make payments on the mortgage loan and the mortgage holder forecloses on the property, HUD will pay the mortgage holder the balance of the loan and assume ownership and possession of the property. Cmplt. ¶ 2.

Luce founded MDR Mortgage Corp. ("MDR"), an approved HUD/FHA loan correspondent,[3] in 1993 and served as president and secretary of the company between approximately December 15, 1993 and October 22, 2008. *Id.* ¶¶ 8-9, 18. On April 7, 2005, Luce was indicted in this Court in *United States v. Robert Luce*, Case No. 05-CR-340-5, for wire fraud, mail fraud, making false statements, and obstruction of justice. *Id.* ¶ 10. On July 17, 2008, Luce entered into a plea agreement in which he agreed to plead guilty to obstruction of justice. *Id.* ¶ 11.

Because MDR was a loan correspondent approved by HUD, it had the authority to originate HUD-insured mortgage loans for sale or transfer to other qualifying mortgagees. Cmplt. ¶¶ 8, 18. Per the complaint, for each loan that MDR originated, it was required to submit, and did submit, forms entitled HUD/VA Addendum to Uniform Residential Loan Application ("Form 92900-A") at the time the loan was submitted for

---

[1] The Court accepts the Government's factual allegations as true for the purposes of Defendants' Rule 12(b)(6) motion. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).
[2] Unless otherwise stated, the Court references the versions of the statutes and regulations applicable during the time period relevant to this dispute.
[3] A loan correspondent is an entity that has as its principal activity the origination of mortgages for sale to other mortgagees. 24 C.F.R. § 202.8(a)(2). It may originate mortgages and submit applications for mortgage insurance, but may not hold, purchase, or service insured mortgages. *Id.*

endorsement. *Id.* ¶¶ 19, 24. MDR identified itself as the lender on Form 92900-A. *Id.* ¶ 24. Form 92900-A requires the lender to make certain certifications. It states, in pertinent part:

> "The undersigned lender makes the following certifications . . . to induce the Department of Housing and Urban Development – Federal Housing Commissioner to issue a firm commitment for mortgage insurance . . . under the National Housing Act. . . . To the best of my knowledge and belief, I and my firm and its principals: . . . (3) are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph G(2) of this certification. . . .

One of the offenses enumerated in paragraph G(2) is "making false statements," a crime for which Luce was indicted in 2005. Cmplt. ¶ 10.

In addition, MDR was required to provide, and per the complaint did provide, an annual certification to HUD on a Title II Yearly Verification Report ("V-form") pursuant to 24 C.F.R. §§ 202.3(b) and 202.5(m). Cmplt. ¶ 20. The V-form stated, in pertinent part:

> I certify that none of the principals, owners, officers, directors and/or employees of the above named mortgagee are currently involved in a proceeding and/or investigation that could result, or has resulted in a criminal conviction, debarment, limited denial of participation, suspension, or civil money penalty by a federal, state, or local government.

For the years 2006, 2007, and 2008 Luce certified the V-form for MDR to submit to HUD. *Id.* ¶ 25.

Between Luce's indictment on April 7, 2005, and October 22, 2008, the government alleges that MDR originated at least 2,539 FHA-insured loans. *Id.* ¶ 26. For each of those loans, Luce submitted or caused to be submitted certifications incorrectly stating that MDR and its principals were not indicted or criminally charged with the

offense of "making false statements." ¶¶ 24-26. A number of these insured loans have gone into default, requiring HUD to pay insurance claims. *Id.* ¶ 27.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In evaluating the sufficiency of the complaint, the Court must "construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich*, 664 F.3d at 212. "However, legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption." *Id.* Under Rule 8(a)(2), a plaintiff's complaint must contain a short and plain statement sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

Luce moves to dismiss the complaint on three grounds. First, Luce argues that the FCA claims fail in their entirety because Form 92900-A and the V-form "do not apply" to MDR or to himself because MDR was not a "mortgagee" or "lender." Second, Luce argues that the FCA claims fail with respect to each loan that has not defaulted because

those loans have not resulted in a claim for an insurance payment to the Government. Third, Luce argues for the dismissal of the portion of Count III, the FIRREA claim, that depends on the Government establishing that Luce violated 18 U.S.C. § 1014 prior to July 30, 2008 because that statute did not cover statements made to HUD before that date.

### 1. The False Statements "Apply" to Luce and MDR.

The allegedly false statements on which the Government's claims are based are representations on Form 92900-A and the V-form that neither the "lender" nor the "mortgagee," respectively, were under indictment. Luce argues that these representations do not apply to MDR or to himself because MDR was not a "lender" or "mortgagee" under the statutory or commonly understood definitions of those terms. MDR was merely a "loan correspondent," Luce argues, and so the representations that no indictment was pending or threatened against the "lender" or the "mortgagee" were not representations about MDR and/or Luce and therefore do not provide a basis for liability under the FCA.

Luce's argument is flawed in several respects. First, it ignores the allegations that Luce caused MDR to submit the forms at issue and that the forms identified MDR—not some other company—as the "lender" and "mortgagee," respectively. Cmplt. ¶¶ 24-25; MTD Resp. at 5, n. 4. The certification required by Form 92900-A expressly identifies the submitting party as the "lender" ("the undersigned lender makes the following certifications") and Form-V's certification applies to the company identified at the top of the form ("the above named mortgagee") as the "mortgagee" to which the certification applies. Fairly read, the complaint alleges that "the undersigned lender" and the "above-named mortgagee" identified on the forms at issue is MDR and, for the purposes of this

motion to dismiss, the Court must accept these allegations as true. *Virnich*, 664 F.3d at 212.

In this light, Luce's contention that a "loan correspondent" like MDR is not *actually* a "mortgagee" or "lender" required to provide certifications to the FHA is beside the point. The complaint alleges that MDR represented itself, via the submission of Forms 92900-A and Forms-V, to be a "mortgagee" and "lender" and that it was not under indictment or facing possible indictment. If MDR is a "lender" and/or "mortgagee," as the Government maintains, then (accepting the Government's allegations as true) it falsely stated that none of its principals had been indicted for making false statements or were involved in a proceeding that could result in a criminal conviction. And if MDR is not a "lender" and/or "mortgagee," as Luce contends, then (again accepting the Government's allegations as true) its submissions were no less false—indeed, they were more so since both aspects of the representation (identity as mortgagee or lender, and absence of indictment) would have been false if Luce's interpretation of the terms is correct. Either way, MDR is alleged to have made false statements in connection with the origination of FHA-insured loans.

In any event, Luce's contention that a loan correspondent like MDR cannot be understood to be a "mortgagee" or "lender" obliged to provide the certifications required by Form 92900-A and Form-V is unpersuasive. Under the statutory and regulatory scheme that governs FHA loans, a "loan correspondent" like MDR is also defined to be a "lender" and a "mortgagee." The regulations promulgated under the National Housing Act, 12 U.S.C. § 1702 *et seq.*, define both terms to include a "loan correspondent." *See* 24 C.F.R. § 202.2 and § 202.8. Consistent with these definitions, 24 C.F.R. §§

202.3(a)(1)(iii) and 202.5(m) required loan correspondents like MDR to submit to HUD a yearly verification form—the V-form, which requires a certification by the "lender"—for recertification.

Luce ignores the regulatory definitions and points instead to several statutory provisions to support his argument that the terms "lender" and "mortgagee" on the certification forms do not apply to loan correspondents. Neither of the statutory provisions he cites, however, is inconsistent with or in any way undermines the validity of the regulatory definitions in effect during the period in which Luce was allegedly submitting false certifications to the FHA. Luce first notes that the definition of "mortgagee" included in § 1708(c)(7) is *consistent* with the Government's interpretation of the term, as it expressly includes loan correspondents under the definition of "mortgagee," but argues that it was not until after MDR stopped originating mortgages that a provision was added to § 1708 expressly requiring HUD approval of such "mortgagees."[4] That does not, of course, mean that HUD did not require loan correspondents to be approved before that date, however, and indeed it did. *See* HUD Mortgagee Letter 2008-17 (available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_36036.doc); HUD Handbook 4060.1 REV-2, FHA Title II Mortgagee Approval Handbook (Aug. 14, 2006).

Luce also submits that 12 U.S.C. § 1707(b) "limits" the definition of "mortgagee" to an entity that actually lends money because it states that the term "includes the original lender under a mortgage, and his successors and assigns approved by the Secretary." By its terms, however, nothing in § 1707(b) "limits" the definition of the term "mortgagee"

---

[4] Luce argued that §1708 was amended in 2011 to require HUD approval of loan correspondent mortgagees took effect in 2011, but in actuality the amendment took effect in May 2009. 12 U.S.C. § 1708(d)(1).

to entities that actually lend money and in any event the definition it provides applies only to the term "as used in § 1709." That section sets forth requirements necessary for mortgagees to be insured and requires that any mortgagee that holds a mortgage be approved by HUD. Section 1707(b) plainly does not reach, much less nullify, regulations that impose other requirements on other classes of "mortgagees," like loan correspondents, which are authorized to originate, but not to hold, mortgages. *See* 24 C.F.R. § 202.8(a) ("loan correspondent lender" and "loan correspondent mortgagee" eligible to originate but not to hold loans and mortgages).[5]

Luce also advocates adoption of narrower dictionary definitions of the terms "mortgagee" and "lender" in lieu of reliance on the regulatory definitions. The regulations define the terms to include "loan correspondents," however, and the forms in question are required by those regulations. As such, the terms must be understood to encompass the regulatory context from which they are derived. *See, e.g., Bloate v. United States*, 130 S. Ct. 1345, 1352 n.9 (2010) (rejecting dictionary definition of terms that "does not account for the governing statutory context"). The question here is whether the use of the terms "mortgagee" and "lender" on form 92900-A and on the V-form, which are required in connection with HUD's mortgage insurance programs, include loan correspondents like MDR. Because a variety of statutory and regulatory provisions include "loan correspondents" within those terms, the argument that HUD

---

[5] Although he does not expressly invoke it, Luce's argument regarding § 1707 amounts to a variation on the interpretive cannon that *expressio unius est exclusio alterius.* As the Supreme Court has repeatedly cautioned, however, the canon has force "only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 168 (2003) (citing cases). In this context, where an extensive regulatory scheme defining and governing other classes of "mortgagees" has been contemporaneously promulgated to give effect to statutory directives, there is simply no basis to infer that Congress intended to negate by implication definitions set forth in those regulations—particularly where the definition Congress provided was expressly limited in application.

meant to exclude loan correspondents from the meaning of those terms when it promulgated those forms is unpersuasive and Luce's motion to deny the claims on this basis is denied.

> ### 2. The Government Properly Seeks to Recover Only for "Claims" Under the FCA.

Luce also moves to dismiss Counts I and II, the FCA claims, with respect to each loan that has not resulted in the Government actually making an insurance payment.

Luce's argument goes to the amount of damages potentially recoverable by the Government, not to the Government's ability to state a valid claim for violation of the FCA. The Government properly alleges that Luce made false statements relating to numerous mortgages, and it alleges that a subset of those mortgages eventually defaulted, requiring HUD to pay out on mortgage insurance claims. If true, Luce's assertion that the remainder of the mortgages did not default, and therefore that no "claim" has been made on those loans, may reduce the amount of damages the Government could potentially recover under Counts I and II.[6] But Counts I and II do not stand or fall on whether *every* allegedly false certification Luce (or MDR, at his behest) submitted can be tied to a loan that defaulted. The government has alleged that some loans defaulted, and that is sufficient to state an FCA claim. The question of which, if any, loans defaulted is a question of fact to be proved at trial; it would be inappropriate to dismiss the FCA claims now solely because Luce may later prove facts showing that the Government cannot recover damages with respect to some fraction of the loans identified in the

---

[6] The Government acknowledges that it can recover damages only for the "false claim[s] Luce submitted or caused to be submitted." MTD Resp. at 8. The Complaint clearly seeks treble damages and civil penalties only for "the false or fraudulent claims paid by the United States." Cmplt. at ¶¶ 36-43.

complaint.[7] *See, e.g., Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996) ("a fact-based inquiry and determination is not generally motion to dismiss territory"); *Smith v. Aon Corp.*, No. 04 C 6875, 2006 WL 1006052, at *8 (N.D. Ill. Apr. 12, 2006) ("The court, however, will not engage in fact-based analysis of the amount of damages at the motion to dismiss stage.").

However, Luce is correct to note that, under the FCA, a "claim" is defined as "any request or demand, whether under a contract or otherwise, for money or property which is made to a[n agency] if the United States Government provides any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A). If there is no "claim" for the United States to pay or reimburse, then there is no basis for liability under the FCA. *See, e.g., U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005) ("As the statute itself puts it, liability attaches only when a false statement is used to get a false or fraudulent claim paid or approved by the Government.") (internal quotation omitted); *United States v. Dolphin Mortg. Corp.*, No. 06 C 499, 2009 WL 153190, *9 (N.D. Ill. Jan. 22, 2009) (FCA claims based on false submissions by mortgage loan correspondent do not arise until default occurs and a demand for payment on the FHA guarantee is made). Accordingly, the Government's contention that Luce will be subject to statutory penalties under the FCA for each of the 2,539 loans for which Luce allegedly submitted false certifications is not correct—unless the Government can establish that each of those loans defaulted and resulted in a claim on the FHA loan guarantee.

---

[7] At some point, however, the Court will likely impose a cut-off date by which the Government will be required to identify specifically which loans it alleges to be in default, in order to close out discovery and to allow the defendant to focus on a finite and static body of evidence.

Luce's assertion that "MDR never filed a claim for FHA insurance or for insurance proceeds" and "the FHA never paid any money to MDR or Mr. Luce," is irrelevant. The FCA imposes liability on anyone who "knowingly presents, *or causes to be presented*, . . . a false or fraudulent claim." 31 U.S.C. 3729(a)(1) (emphasis added). Even if Luce and MDR did not directly file claims for FHA insurance or insurance proceeds, the Complaint sufficiently alleges that they caused such claims to be filed. The Seventh Circuit has held that when "a false statement is integral to a causal chain leading to [government] payment," it does not matter whether that statement was preliminary to the eventual "claim." *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916 (2005). When a party makes a false statement and knowingly causes another entity to use that statement later to make a claim for governmental payment, the false statement violates the FCA. *Id.*; *see also Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 671 (2008) (for example, "a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim").

Therefore, the second portion of Luce's Motion to Dismiss is denied.

### 3.      The Government's FIRREA Claim is Sufficiently Pled.

Finally, Luce moves to dismiss the portions of Count III that rely on 18 U.S.C. § 1014 because that statute did not cover false statements made to the FHA prior to statutory revisions that became effective on July 30, 2008.

In Count III, the Government seeks to recover civil penalties under FIRREA, 12 U.S.C. § 1833a, which sets forth maximum penalties for violations of other sections of FIRREA. Section 1833a damages apply "to a violation of, or a conspiracy to violate," certain statutes, including 18 U.S.C. § 1006 and 18 U.S.C. § 1014. 12 U.S.C. § 1833a(c).

11

The Government claims that Luce violated both 18 U.S.C. § 1006 and § 1014, and that the violation of each section independently makes penalties available under 12 U.S.C. § 1833a.

Luce correctly recognizes—and the Government does not dispute—that prior to July 30, 2008, 18 U.S.C. § 1014 did not prohibit false statements to the FHA. This is not sufficient to warrant dismissal of any portion of Count III, however, because the Government asserts a second, independent, ground for liability for each false statement: 18 U.S.C. § 1006. Count III does not allege that certain false statements violated § 1006, while others violated § 1014. Rather, it alleges that each of Luce's alleged false statements violates *both* sections. Because Luce does not challenge the application of 18 U.S.C. § 1006 to each of his allegedly false statements, no portion of Count III can be dismissed. Therefore, this portion of Luce's Motion to Dismiss is also denied.

\* \* \*

For all of these reasons, the Court denies Defendant Luce's Motion to Dismiss the Government's Complaint.

Date 6/20/2012

John J. Tharp

Honorable John J. Tharp, Jr.