**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 11 C 05158 |
| ROBERT S. LUCE | ) | |
| | ) | Judge John J. Tharp, Jr. |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The United States of America brought suit against Robert S. Luce, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* and the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a, for statements made in relation to loan applications submitted to the U.S. Department of Housing and Urban Development ("HUD") and the Federal Housing Administration ("FHA"). The statements were made on 92900-A forms submitted by MDR Mortgage Corporation ("MDR") (the company Luce founded and presided over) and on MDR's annual verification forms, "V-forms." The government moves for partial summary judgment as to liability on all counts. *See* U.S. Mem. in Supp., Dkt. 86. Luce moves for partial summary judgment for the statements made on all of the 92900-A forms and for the statements made on the V-forms prior to January 30, 2007 and after February 25, 2008. *See* Luce Mem. in Supp. at 9, Dkt. 94. For the following reasons, both motions are granted in part and denied in part.

# BACKGROUND[1]

Robert Luce is an attorney; he obtained a law degree from Loyola University in 1972. USSOF ¶ 1. Following law school, Luce first worked with the Securities and Exchange Commission as an attorney in the enforcement division. USSOF ¶ 1. After working with the SEC for four years, Luce held an in-house counsel job with a pharmaceutical company and then went into private practice with various Chicago law firms for approximately 14 years before he started his own firm in 1990, where he continues to practice.[2] USSOF ¶ 2. Luce was also an investor with a number of companies in the mortgage industry and eventually started his own mortgage company, MDR, of which he served as president from its founding in 1993 through its closure in 2008. USSOF ¶ 3.

Between 1993 and 2008, MDR was a mortgage broker and a loan correspondent for HUD/FHA. USSOF ¶ 4. As a loan correspondent, MDR could originate loans by sending loan applications to a HUD-approved direct endorsement sponsor mortgagee for underwriting approval prior to loan closing. USSOF ¶ 4. Depending on the type of loan, a loan correspondent mortgagee, such as MDR, took such actions as verifying the borrower-applicant's employment information, earnings, and assets. USSOF ¶ 4. More than 90% of the loans MDR processed were loans insured by the FHA, and about 95% of the FHA loans MDR processed were "stream line"

---

[1] The Court takes the following facts from the United States' Statement of Facts ("USSOF") (Dkt. 87), where undisputed, from Luce's Statement of Facts ("LSOF") (Dkt. 92), where undisputed, the United States' Response to LSOF and Statement of Additional Facts ("U.S. Resp.") (Dkt. 97), Luce's Response to USSOF ("L Resp.") (Dkt. 99), Luce's Response to the United States' Additional Facts ("Luce Add'l Resp.") (Dkt. 103), and the United States' Response to Luce's Statement of Additional Facts ("U.S. Add'l Resp.") (Dkt. 107).

[2] Records of the Illinois Attorney Registration and Disciplinary Commission reflect that Luce retained his license, but was suspended from the practice of law for five months, between October 2010 and March 2011, as the result of a conviction discussed below. *In re Robert S. Luce,* 09CH0031.

loans, which means the borrowers were refinancing existing FHA loans into lower rate FHA loans. USSOF ¶ 4.

The procedure for processing a loan at MDR was as follows: loan officers would first talk to potential borrowers to find out what kind of rate they wanted and to learn about the property they wanted to finance. USSOF ¶ 18. The loan officer would let the potential borrower know the rate that MDR received daily from lenders and set up an appointment with the borrower to get their W2s, pay stubs, home insurance, lender statement, and other necessary documents to process the loan application. USSOF ¶ 18. The loan officer would then complete a loan application, which included a 92900-A form, and when the packet was complete, the loan officer would give it to the loan processing department at MDR. USSOF ¶ 18. The processing department would review the package to make sure all of the correct documents were included, and if something was missing, like a signature, the processer would notify the loan officer to complete the paperwork before sending the loan application to a lender for underwriting. USSOF ¶ 19.

The HUD handbook instructs that loan correspondents, like MDR, "must complete the Mortgagee Certification part of Form [92900-A]."[3] Form 92900-A contains the following certification:

---

[3] The Handbook references Form 54113, which HUD merged with Form 92900-A in 1995. USSOF ¶ 22.

> [T]he undersigned lender makes the following Certifications to induce . . . the Department of Housing and Urban Development-Federal Housing Commissioner to issue a firm commitment for mortgage insurance or a Mortgage Insurance Certificate under the National Housing Act . . . .
> To the best of my knowledge and belief, I and my firm and its principals: . . . are not presently indicted or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph G(2) of this certification [the offenses enumerated in paragraph G(2) include the offense of making false statements] . . .

USSOF ¶ 26. MDR loan officers understood that if they did not sign the 92900-A form, the loan would not get processed. USSOF ¶ 25.

Luce employed James Passi, his son-in-law, as the office manager and Vice President of Operations of MDR until December 2006. USSOF ¶ 12; LSOF ¶ 16. Luce's law practice was located in the same building as MDR, and he often stopped by the MDR office to talk with the employees about the business and other general matters. L Resp. ¶¶ 7, 9-10. Luce was also involved in annual training and continuing education classes at MDR and "handle[d] administrative matters such as loan officer compliance and compliance with state and federal regulations." L Resp. ¶ 11; U.S. Ex. 2 at 1. Luce states that he was not involved in any training regarding form 92900-A, and none of the loan officers recalled Luce ever instructing them on 92900-A form.[4] L Resp. ¶¶ 13-14. Neither Julia Shaffer, former director of HUD's Quality

---

[4] The government's Rule 56.1 Statement of Facts asserts that "the loan officers would be advised by Luce and Passi on how to complete the 92900A forms." USSOF ¶ 13. The only evidence cited for this statement is the deposition testimony of Thomas Murray, a former MDR loan officer. In response to questions about annual training conducted by Luce and Passi, Murray agreed with the government that during training sessions, the assembled staff would "discuss the documents that needed to be completed for HUD or FHA loans." USSOF Ex. 13 at 31:4-7. Murray then confirmed that among the documents reviewed during such training sessions was the form 92900A. *Id.* at 31:8–32:11. When specifically asked whether he had a specific recollection of any training session in which Luce covered the form 92900A, however, Murray said that "it could have been either one or both," that he had no specific recollection of Luce providing any information on how to fill out the form, and that he could not say for certain that

4

Assurance Division, nor Brad Geary, HUD assistant special agent, ever saw a 92900-A form that Luce had signed. LSOF ¶ 48.

Pursuant to HUD regulations, mortgagees are ineligible to participate in the HUD/FHA mortgage insurance program if any of their officers, partners, directors, principals, managers, or supervisors are "indicted for, or convicted of, an offense that reflects adversely upon the integrity, competency, or fitness to meet the responsibilities of the lender or mortgagee to participate in the Title I or Title II programs." USSOF ¶ 34. To comply with 24 C.F.R. §§ 202.3(b) and 202.5(m), HUD requires mortgagees to provide a Yearly Verification Report, the V-form, as part of the lender's annual recertification, which states:

> I certify that none of the principals, owners, officers, directors and/or employees of the [loan correspondent] are currently involved in a proceeding and/or investigation that could result, or has resulted in a criminal conviction, debarment, limited denial of participation, suspension, or civil monetary penalty by a federal state or local government.[5]

USSOF ¶ 35; 24 C.F.R. § 202.8(a)(2).

Luce personally signed V-forms that were submitted on January 29, 2007 and February 4, 2008. These forms included a designation near the top for "FISCAL YEAR END:"; the form submitted in January 2007 stated "FISCAL YEAR END: December, 2006" and the form submitted in February 2008 stated "FISCAL YEAR END: December, 2007." L Resp. ¶ 35; Luce Ex. X. Luce argues that the V-forms apply to the year in which they were submitted—*i.e.* to 2007 and 2008, respectively. L Resp. ¶ 35. The United States contends that the V-forms apply to

---

Luce ever instructed him about how to fill out the form. *Id*. at 60:3–61:1. Murray also stated that if he had any questions about the 92900A form, he would ask Passi. *Id*. at 45:11-13.

[5] The V-forms also contain a certification that the undersigned "know[s], or [is] in a position to know, whether the operations of the above named mortgagee conform to HUD-FHA regulations, handbooks, and policies." LSOF Ex. 36.

the prior fiscal year—*i.e.* to 2006 and 2007, respectively. USSOF ¶ 35. HUD has not produced a paper copy of a V-form submitted in 2006 (for "fiscal year end" 2005) but has a record of the corresponding certification payment that MDR made that year, which would have accompanied the V-form. U.S. Resp. ¶ 69.

On April 7, 2005, Luce was indicted for wire fraud, mail fraud, making false statements, and obstruction of justice in connection with SEC violations that were unrelated to the operation of MDR. USSOF ¶ 15. Although Luce informed Passi of the indictment in 2005, Luce did not instruct Passi to tell the MDR loan officers not to sign the 92900-A certifications. USSOF ¶¶ 16, 29; U.S. Resp. ¶ 18. Luce states that he never told anyone to not sign the 92900-A forms because he was not aware of the 92900-A forms (and the certification on those forms) until this lawsuit was filed.[6] USSOF ¶ 30.

Luce and former Vice President and son-in-law Passi apparently had a falling out because, over a year after Passi left MDR, in early 2008, Passi contacted HUD to inform the agency of the pending charges against Luce. LSOF ¶ 27. In response to Passi's information, Brad Geary, assistant special agent in HUD's Office of Inspector General ("OIG"), spent approximately one week investigating Luce in February 2008 and then referred the matter to the HUD Departmental Enforcement Center for possible suspension and/or debarment. U.S. Resp. ¶¶ 27-29. HUD issued a notice of proposed debarment of Luce on May 20, 2008. U.S. Resp. ¶ 35. In a June 26, 2008 letter requesting reconsideration or withdrawal of the proposed debarment, Luce explained that his "interpretation of those questions [on the certification form

---

[6] The government states that although "HUD does not have a record of Luce signing a 92900-A document, there is a record of Luce ordering case numbers for FHA loans in HUD's FHA Connection system." U.S. Resp. ¶ 23. Luce responds that he has never ordered a case number for an FHA loan, did not know how to do so and never discussed ordering case numbers with any MDR employees. Luce Ex. EE ¶ 3.

was] that they were directed at possible charges relating to the mortgage industry." U.S. Ex. 2 at 8. Luce pled guilty to obstruction of justice in July 2008, after which he held a meeting at MDR to explain that he had criminal troubles and that MDR had lost its mortgage license and would cease doing business. USSOF ¶¶ 17, 39.

On August 7, 2008, Luce filed amended versions of the V-forms submitted in January 2007 and February 2008 by attaching a five-page letter explaining the nature of the charges against him. USSOF ¶ 36; U.S. Ex. 1, Luce dep. Ex. 4. HUD filed a brief in the debarment matter in October 2008, to which Luce did not respond. U.S. Resp. ¶ 35. Luce failed to appear at the debarment hearing on July 1, 2009. U.S. Resp. ¶ 35. On August 12, 2009, the HUD debarring official issued a determination debarring Luce from all covered transactions "subject to the Federal Acquisition Regulation (48 CFR chapter 1)" for three years. U.S. Ex. 20 at 6.

Between April 7, 2005, (the date of Luce's indictment), and October 22, 2008, (the date of MDR's termination from HUD/FHA programs),[7] at least 250 FHA loans that MDR originated have gone into default and have resulted in HUD paying insurance claims.[8] USSOF ¶ 41; U.S. Resp. in Opp. at 5 n.2, Dkt. 98. The United States brought suit against Luce in July 2011, seeking treble damages and civil penalties under the FCA and civil penalties under FIRREA. *See* Compl., Dkt. 1. The government seeks civil penalties and damages for defaulted loans insured during fiscal years 2005-2007 (during which time it alleges Luce had false V-form certifications on file) and for defaulted loans containing 92900-A form certifications submitted post-Luce's

---

[7] Luce disputes that October 22, 2008 is MDR's termination date, instead arguing that MDR ceased involvement with HUD/FHA programs on the date it went out of business—August 8, 2008. L Resp. ¶ 41. Because that is a factual issue related to damages and the summary judgment motions focus solely on liability issues, this dispute is irrelevant to the Court's decision.

[8] As Luce notes, there is no contention or evidence in this matter that any of the loan defaults are attributable to any malfeasance or negligence on the part of MDR or Luce. So far as the record reveals, the loans that defaulted would have done so in any event.

indictment. The Court denied Luce's motion to dismiss on June 20, 2012. Dkt. 31. The government now moves for partial summary judgment on liability on all counts; Luce moves for partial summary judgment on all of the 92900-A forms and on the V-forms prior to January 30, 2007 and after February 25, 2008.

## DISCUSSION

The United States alleges violations of the FCA and FIRREA for the certifications made on the 92900-A forms and on the V-forms. To prevail on a summary judgment motion, the movant must demonstrate that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is only appropriate when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). Summary judgment is also "properly entered against a party 'who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Hakim v. Accenture U.S. Pension Plan,* 718 F.3d 675, 681 (7th Cir. 2013) (*citing Parent v. Home Depot, U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted)). Therefore, a "party opposing the motion for summary judgment must 'submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (*citing Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir.2010) (citations omitted)).

## I.      False Claims Act

The FCA provides liability for any person who "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1); *see also U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818,

822 (7th Cir. 2011). The civil penalties for violators range from $5,000 to $10,000, "plus 3 times the amount of damages which the Government sustains." *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (*quoting* 31 U.S.C. § 3729(a)(1)(G)).

The knowledge requirement can be satisfied by actual knowledge, deliberate indifference, or reckless disregard "to the possibility that the submitted claim was false." *King-Vassel*, 728 F.3d at 712. A person acts with reckless disregard "'when the actor knows or has reason to know of facts that would lead a reasonable person to realize' that harm is the likely result of the relevant act." *Id.* (*quoting Black's Law Dictionary* 540-41 (9th ed. 2009)). "While innocent mistakes or negligence are not actionable under [the FCA], the statute does not require a specific intent to defraud." *King-Vassel*, 728 F.3d at 713 (internal citations and quotations omitted).

A. **92900-A Forms**

Luce's potential liability based on the submission of false 92900-A forms turns entirely on whether Luce knew that MDR was required to submit the forms as part of each loan application. Simply put, if Luce did not know that the forms were being submitted, he is not liable for the fact that the certifications on the forms were false. *Yannacopoulos*, 652 F.3d at 832-33. Both sides seek summary judgment on Luce's liability for the false 92900-A forms, so to prevail on their motions regarding this question, each bears the burden of establishing that there is no material dispute of fact regarding Luce's knowledge of the forms. Neither can do so.

Luce asserts that he had no awareness of the forms until this litigation and points to the government's failure to adduce evidence that connects Luce to even one of the forms. The United States does not dispute that the MDR loan officers were responsible for filling out the paperwork for the FHA loans, including the 92900-A forms, that the loan officers sent the forms to the processing department to review and ensure completion, and that the processing

department employees sent the loan file to the underwriter—all without Luce's involvement. The United States has adduced little evidence that Luce knew of the requirement to file 92900-A forms with each loan application—no signature by Luce on any of the forms; no testimony from Passi or any other employee that Luce ever saw the forms; no information about the forms that was ever presented to or received by Luce personally.

The government responds that Luce's claim that he had absolutely no awareness of the form "seems absurd" and that Luce's knowledge of the requirement to file the forms with each application can reasonably be inferred because he: "(1) participated in the trainings at MDR where the Form 92900-A was discussed, (2) was responsible as president for 'loan officer compliance and compliance with state and federal regulations' at MDR, and (3) has a background as a government attorney, former large-firm partner, and mortgage business owner who was trained in mortgage industry laws and regulations." U.S. Mem. in Supp. at 9. The government points to the testimony of Thomas Murray, who, in response to questions about annual training conducted by Luce and Passi, agreed that the assembled staff would "discuss the documents that needed to be completed for HUD or FHA loans" and specifically confirmed that they reviewed the 92900-A form at training. USSOF Ex. 13 at 31:4-7. Murray could not specifically recall whether Luce or Passi covered the 92900-A form in training, however, stating that "it could have been either one or both," that he had no specific recollection of Luce providing any information on how to fill out the form, and that he could not say for certain that Luce ever instructed him about how to fill out the form. *Id*. at 60:3–61:1.

The government also argues that, as an experienced attorney who practiced with the SEC and invested in a number of companies in the mortgage industry, Luce should have been aware of the required forms his company was submitting to the government. His law practice was

located in the same building as MDR and he was a frequent presence in the office; he attended company trainings on FHA forms, admitted responsibility for compliance with state and federal regulations, and even certified on the V-forms that he "kn[e]w, or [was] in a position to know, whether the operations of [MDR] conform to HUD-FHA regulations, handbooks, and policies." LSOF Ex. 36. The government also cites to the FHA case numbers that were ordered in Luce's name, suggesting that he had personal involvement in the loan application process, and the fact that a 92900-A form could be found in *every* loan application file MDR maintained. Based on these facts, the government argues, Luce must have known about the requirement to file 92900-A forms with each loan application MDR submitted.[9]

That is an overstatement; the government's evidence is far too thin to command a conclusion that Luce knew about the requirement to file forms 92900-A. Indeed, the evidence of Luce's knowledge is so thin that the more relevant assessment is whether any jury could reasonably conclude that he had the requisite knowledge. Although the government's evidence is

---

[9] The government's repeated arguments that Luce is liable even if he did not have actual knowledge of the submission of false 92900-A forms because liability can be premised on reckless and deliberate indifference to the truth are off-the-mark. If Luce did not know of the requirement to submit the forms in the first place, then he could not have recklessly or deliberately disregarded the question of whether the forms were being completed accurately. The cases the government cites as examples of such avoidance tactics are therefore distinguishable by the fact that in each, the defendant knew that statements were being made but took steps to insulate themselves from liability by recklessly assuming, or deliberately avoiding knowledge of, the truth or falsity of the statements being made. In *U.S. ex rel. Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00 C 3289, 2004 WL 1093784 (N.D. Ill. May 7, 2004), for example, a law firm partner knew that his employees were post-dating claims (which were the false statements at issue), but, without conducting any research or consulting any specialists, recklessly assumed that such actions were permissible as long as the claims were credited to the accounts within a reasonable time. *Id.* at *2-3. Similarly, in *U.S. v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008), although the president of the company did not sign the cost reports at issue, he was familiar with the reports, had signed reports in the past, and attended meetings discussing the propriety of including the false statements on the cost reports. 531 F.3d at 1168. These cases provide no support to the government; if Luce did not know that certifications were being made with each loan application, then he could not have sought to avoid information about whether those certifications were being made accurately.

attenuated and highly inferential—the testimony of one loan officer who cannot recall for certain whether Luce conducted training on the form and the inference that Luce had to have known based on his experience, position, and involvement at MDR—but the Court cannot conclude that no reasonable jury could find that Luce did not know of the requirement to file 92900-A certifications with each loan application. Similarly, Luce's mere assertion that he was not aware of these forms until the present litigation is not sufficient to establish, as a matter of law, the lack of a material dispute of fact regarding Luce's knowledge of the forms in the face of some evidence that, in fact, he was familiar with the form.

Because the government has failed to provide evidence that precludes a jury finding in Luce's favor regarding his knowledge of the 92900-A forms, the government's motion for summary judgment as to Luce's liability on claims arising from the submission of those forms is denied. Similarly, because a jury could conclude based on the evidence presented that Luce did know of the requirement to file 92900-A forms with each loan application, Luce's summary judgment motion must also be denied. Whether Luce had actual knowledge or was recklessly or deliberately indifferent to the existence of the 92900-A forms is a credibility determination for a jury that precludes a finding of summary judgment for either party on the 92900-A forms. *See Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.").

B.     V-Forms

While there is room for doubt about Luce's knowledge of the submission of false forms 92900-A, the same cannot be said for the V-forms. Luce personally signed the V-forms that were submitted on January 29, 2007 and on February 4, 2008. Thus, Luce knowingly made a false

claim by certifying that none of the principals of MDR were involved in a proceeding that could result in a criminal conviction; the claim was false because Luce himself was under investigation when he submitted the V-forms. Luce attempts to make a linguistic argument to explain away these blatantly false certifications: because the certification only relates to "a proceeding that *could* result, or has resulted in a criminal conviction," and Luce "believed he was innocent of the charges brought against him and, therefore, [ ] honestly did not believe he could be convicted," he had not knowingly made false statements. Luce Resp. in Opp. at 15-16, Dkt. 102.

This argument is nonsense. To begin, Luce's argument is flatly at odds with his guilty plea in July 2008, just a few months after he submitted one of the V-form certifications in February 2008. Contrary to his present argument, Luce did not believe himself to be innocent of the criminal violations for which he was under investigation—***he pled guilty to at least one of them,*** and expressly acknowledged his guilt. *See* Luce Plea Agr. No. 05-CR-00340-5 at ¶ 6, Dkt. 217 ("Factual Basis: Defendant will plead guilty because he is in fact guilty of the charge contained in Count Twenty of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilty beyond a reasonable doubt . . . .")[10] The V-form certification, moreover, did not ask whether Luce thought he *should* be convicted, or whether he *would* be convicted; it required him to disclose any investigation or proceeding that *could* result in a conviction—that is, a matter in which there was the possibility of conviction. This investigation in fact *did* result in a conviction; Luce pled guilty to obstruction of justice. Clearly then, at the time of indictment, it "could" have resulted in conviction—particularly since, as Luce admitted in pleading guilty, he was guilty.

---

[10] The Court may take judicial notice of public documents. *See, e.g. Deicher v. City of Evansville, Wis.*, 545 F.3d 537, 541 (7th Cir. 2008).

While Luce's V-form certifications are clearly false, the import of those false certifications is less certain. The United States takes the position that the V-form is effectively a certification that covers the preceding fiscal year; according to the United States, by submitting a false V-form, Luce essentially submitted a false statement with every loan application MDR submitted during the prior year, making him liable for every FHA insurance claim asserted on any of the loans MDR originated during the preceding year. Luce, by contrast, maintains that the V-form certification is phrased in the present tense (no principals "are currently" under investigation) and so cannot be read to certify anything at all about whether the same held true over the prior year.

The V-form is titled "Title II Yearly Verification Report," and it includes a designation for the fiscal year to which it pertains. Both forms that Luce signed designate the fiscal year as the preceding year, not the year in which Luce submitted the form. There is, as well, evidence that the V-form certifications were intended to pertain to the completed fiscal year the report designated, rather than the year in which the form was submitted. Julie Shaffer, a 26-year veteran with HUD and former director of HUD's Quality Assurance Division, stated that the forms apply to the prior fiscal year.[11] *See* U.S. Ex. 17 at 5; Ex. 27 at 8. Additionally, the HUD Handbook notes that "[t]he [yearly verification] report must be completed by the mortgagee, signed by a senior officer (vice president or above) and returned to FHA within 30 days after the close of the mortgagee's fiscal year." U.S. Ex. 38 at 2. Further supporting this inference is the federal

_____

[11] Luce assets that Shaffer's declarations contradicted her deposition testimony by asserting, for the first time, that the V-forms apply to the previous fiscal year, and, therefore, her declarations should be disregarded. L Resp. in Opp. at 6. Shaffer's declarations do not contradict her deposition testimony; in her deposition, she responded affirmatively when asked if the V-forms were *received* in January 2007 and February 2008. Luce Ex. 2 at 82:1-8. Shaffer did not discuss to what years the V-forms applied nor did she make any other related statements contradicted in her declarations.

regulation requiring a mortgagee to submit, along with the V-form, financial statements within 30 days of the end of each fiscal quarter in which the mortgagee experiences an operating loss of 20% of its net worth. *See* 24 C.F.R. § 202.5(m)(1) (2013). Based on this evidence, the Government maintains that "Luce certified to all origination activity in 2006 and 2007 when he signed the V-forms for those years." U.S. Reply at 7.

All that said, the government's contention that "by certifying the V-forms, Luce induced HUD to insure FHA loans that MDR originated," Reply at 11-12, is plainly wrong if it refers to loans that HUD approved ***before*** Luce submitted the certification. A certification that had not yet been made could not have induced HUD to do anything. Moreover, and as the government acknowledges, the V-form was part of an annual recertification process, which suggests that the purpose of the certification was to qualify MDR to continue originating loans in the forthcoming year, rather than to attest to compliance with required conditions for loan origination during the past year. So understood, the V-form certification was forward-looking, and that interpretation is far more consistent with the language of the certification itself, which says nothing at all about the past conduct of any principal.

And there's the rub. Even assuming, for the sake of argument, that HUD intended the V-form certification to apply to the past year, rather than to the date of submission, ***the form does not say so***. Whatever use HUD may make of the V-form certification does not change what the certification—and by extension, the person making the certification—actually says. Unless Luce had some reason to know that the V-form certification would be construed as a post-issuance certification, there is no basis to infer that he shared HUD's understanding that the certification was intended to bless loans that had already been issued rather than loans that would be issued in the coming year. Particularly in the context of opposition to a summary judgment motion, and a

certification drafted by HUD, it cannot be said, as a matter of law, that in stating that he was not "currently" under investigation or indictment, Luce knowingly provided a certification of any loans that had been issued over the course of the prior year.

The upshot of all of this is that the United States' motion for summary judgment as to loans originated in 2005 must be denied. The government based its argument with respect to loans originated in 2006 on the retrospective application of the certification Luce made in February 2007; construed as forward-, rather than backward-, looking, however, the February 2007 certification does not support liability on loans originated in 2006. Liability on the 2006 loans, then, turns on whether Luce submitted a V-form certification in support of recertification for that year. HUD acknowledges that it was unable to produce a copy of a V-form submitted by Luce in 2006, but it located and produced a record of MDR's recertification payment in 2006,[12] which is required to be submitted along with the V-form. U.S. Ex. 27 at 8. Since MDR paid the requisite annual fee in 2006, the Government argues, Luce must have submitted the V-form certification for that year as well.

Luce responds that the government's failure to present evidence of a V-form submitted prior to the form submitted in January 2007 cannot support a finding of liability based on that form. Asserting that a party has failed to meet its burden of proof, however, is not an adequate response on summary judgment. *See Hakim,* 718 F.3d at 681 (A "party opposing the motion for summary judgment must 'submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial.'"); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000) ("[A] party will be successful in opposing summary judgment only when they

---

[12] The government did not include the record of the payment receipt as an exhibit or note the date that it received the payment. Presumably the payment and corresponding form were submitted in January or February of 2006, as with the 2007 and 2008 forms.

present definite, competent evidence to rebut the motion."). The government put forth evidence sufficient (if barely) to support a reasonable inference that Luce submitted a V-form in 2006, and it is utterly implausible to believe that Luce would have submitted a truthful certification on this form (noting that he was currently under indictment) when the form for the following two years were submitted under the same factual circumstances yet contained the false certification.

The government presented evidence of submission of the 2006 V-form containing the certification that no MDR principals were currently involved in a criminal proceeding—namely, the payment record of the accompanying annual recertification fee. Luce did not contest this evidence; he did not assert that MDR did not pay the fee in 2006 or that MDR did not submit a V-form accompanying that payment or even that the V-form did not have a signed certification attesting that no MDR principals were involved in a criminal proceeding. Because Luce failed to challenge the existence of the 2006 V-form, the government has presented undisputed evidence that MDR submitted a V-form in 2006 with a false certification. There is, then, a basis for Luce's liability for loans issued in 2006 as to which claims have been made. There is, however, no basis to hold Luce liable for claims arising from loans made in 2005, because the Government presented no evidence that Luce provided a V-form certification in that year.

Luce next challenges that the V-form could form the basis of a false claim after the OIG investigation concluded on February 25, 2008, because the government had knowledge of the falsity of his statement. Luce submitted a false V-form on February 4, 2008, shortly before Passi contacted OIG to report Luce's indictment. OIG conducted a week-long investigation then referred the matter to HUD on February 25, 2008 for Luce's potential suspension or debarment. The government counters that OIG's knowledge of the falsity in February cannot be imported to the branch of HUD that insures loans. *See Veridyne Corp. v. United States*, 758 F.3d 1371, 1379

(Fed. Cir. 2014) (knowledge of falsity by one government agency did not void an FCA claim by another agency).

It is true that "[t]he government's prior knowledge of an allegedly false claim can vitiate an FCA action." *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 544-45 (7th Cir. 1999). The cases Luce cites where the government's "knowledge" negates the defendant's scienter, however, all involve situations that are quite distinguishable, in which the government was actively working with contractors (the party who submitted the false claim) and approving or directing the submission of false claims; "[w]here the government and a contractor have been working together, albeit outside the written provisions of the contract, to reach a common solution to a problem, no [FCA] claim arises." *U.S., ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 491 F.3d 254, 262-63 (5th Cir. 2007) (*citing United States v. Southland Management Corp.,* 326 F.3d 669, 682 (5th Cir. 2003); *U.S. ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 288-89 (4th Cir. 2002); *U.S. ex rel. Lamers v. City of Green Bay,* 168 F.3d 1013, 1019-20 (7th Cir. 1999); *U.S. ex rel. Butler v. Hughes Helicopters, Inc.,* 71 F.3d 321, 326-27 (9th Cir. 1995)). In *Durcholz*, for example, naval officials ordered a contractor to dredge ponds quickly and made it clear that they were not concerned that the pricing estimates contain dredging line-item bids (as opposed to excavation line-items, as required per regulations). 189 F.3d at 543-44. When the government intervened on behalf of an unsuccessful bidder alleging false claims relating to the lack of dredging line-items, the Seventh Circuit declined to hold the contractor liable under the FCA:

> [T]he government not only knew that FKW's proposal and invoices contained excavation line-items, it directed FKW to use those pricing numbers. In essence, then, [the relator] is alleging that the government was defrauded by the very activities that its agents ordered. We decline to hold FKW liable for defrauding the government by following the government's explicit directions

*Id*. at 545.

Even in cases like *Durcholz*, that the government's knowledge of the falsity extinguishes the defendant's knowing submission of a false claim "is only an inference. It does not *automatically* preclude a finding of scienter." *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 952 (10th Cir. 2008) (emphasis in original); *see also U.S. ex rel. Kreindler & Kreindler v. United Tech. Corp.,* 985 F.2d 1148, 1156 (2d Cir. 1993) ("[T]he defendant's knowledge of the falsity of its claim . . . is not automatically exonerated by any overlapping knowledge by government officials."); *Southland Mgmt. Corp.,* 326 F.3d at 682 n.9 (Jones, J., concurring) ("Courts have qualified the importance of government knowledge by stating that it may not always provide a conclusive defense to the claimant."). "The proper focus of the scienter inquiry under § 3729(a) must always rest on the defendant's "knowledge" of whether the claim is false, a knowledge which may certainly exist even when a government agency misinterprets its own regulations and chooses—with full comprehension of the facts—to pay a false claim." *Orenduff*, 548 F.3d at 952-53.

At the time Luce submitted the 2008 form, he knew the certification was false, yet he submitted it regardless. Rather than immediately amending the form to report the indictment after the OIG investigation and debarment referral, Luce waited until August 7, 2008, after he pled guilty, to submit amended V-forms for 2007 and 2008. Instead of agreeing to debarment, moreover, Luce contested the debarment proceedings throughout the summer of 2008, during which time MDR continued to submit loan applications. Luce is essentially arguing that HUD-

FHA were negligent in continuing to certify loans after the OIG investigation. Luce could have prevented the continued submission of loans while MDR operated under the false V-form, however, by ceasing MDR's operations or by submitting an amended V-form. Instead, he simply contested the proceedings until his conviction and continued to permit MDR's submission of loan applications. HUD's later-acquired knowledge of Luce's indictment does not defeat Luce's scienter at the time he submitted the false V-form. Only Luce had the ability to amend the V-form and rectify his false statement. He cannot now claim that it is the government's fault that his knowingly false statement remained on file until August 7, 2008, when he submitted the amended form. Thus, Luce is liable for damages associated with loans insured until August 7, 2008, when he amended his false statement.

The parties also dispute materiality; to be liable under the FCA for the false certifications on the V-forms, the certifications must have been material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B). Luce argues that the V-forms cannot be material because the government failed to produce a copy of the form submitted in 2006. This therefore proves, Luce argues, that the government continued to insure loans originated by MDR without a V-form on file.[13] The government asserts that the V-forms were a prerequisite to MDR's participation in the FHA program as a loan correspondent mortgagee and that, had HUD not received the annual V-forms, it would not have insured the loans MDR originated.

---

[13] Luce also argues that the V-forms are not material because HUD chose to stop regulating loan correspondents in 2010. Luce Resp. in Opp. at 18-19. While HUD's regulatory actions two years after MDR closed are not even necessarily relevant, Luce fails to note that the 2010 FHA reform did not simply eliminate regulation of loan correspondents but rather required their sponsorship through third-party originators or required them to apply to be an FHA-approved mortgagee. *See* Strengthening Risk Management Through Responsible FHA-Approved Lenders, 75 Fed. Reg. 20718-01 (Apr. 20, 2010). This reform shifted oversight over loan correspondents, rather than eliminated it.

The Seventh Circuit has stated that a false certification of compliance with a prerequisite to government payment is the basis for a FCA claim. *See U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). In *United States ex rel. Main v. Oakland City Univ.,* 426 F.3d 914 (7th Cir. 2005), the Seventh Circuit "considered whether a[n agreement] entered into by an institution qualified as a false record under the FCA where the promises of future compliance it contained were false when the parties entered into the agreement." *Sanford-Brown*, 788 F.3d at 708 (*citing Main,* 426 F.3d at 916). The court concluded that the form qualified as a false record, noting that "[i]f a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the paperwork." *Main,* 426 F.3d at 916. *Cf. United States v. First Nat'l Bank of Cicero*, 957 F.2d 1362, 1374 (7th Cir. 1992) ("[A] demonstration that the government would not have guaranteed the loan 'but for' the false statement is sufficient to . . . permit recovery under the False Claims Act.").

Here, federal regulations prohibit from FHA-eligibility any mortgagees who have an officer, partner, director, principal, manager, or supervisor that is "indicted for, or convicted of, an offense that reflects adversely upon the integrity, competency, or fitness to meet the responsibilities of the lender or mortgagee to participate in the Title I or Title II programs." 24 C.F.R. § 202.5(j)(2) (2013). To satisfy with this regulation, HUD requires mortgagees to attest to compliance with 24 C.F.R. § 202.5(j)(2) on the V-form, which is an annually required form for a mortgagee to participate in the Title II loan insurance program. 24 C.F.R. § 202.5(m) (2013); *see also* 24 C.F.R. § 202.3(b) (2013). Because the certification on the V-forms constituted fraud in fulfilling a prerequisite to receiving government funds, that is sufficient to impose liability under the FCA.

The government presented undisputed evidence that Luce knowingly submitted false certifications on the V-forms in 2006, 2007, and 2008, which were a requirement for participation in the FHA loan program. Thus, the government is granted summary judgment as to Luce's liability under the FCA for claims arising from mortgages originated by MDR during those years.

## II. FIRREA

Title 18 U.S.C. § 1006 provides liability for a false statement made by "an officer, agent or employee of or connected in any capacity with" HUD, with intent to defraud or deceive HUD. A violation of § 1006 is one of the predicate offenses identified in section 951 of FIRREA, 12 U.S.C. § 1833a, which provides for civil penalties up to $1,000,000 per violation.

Luce is covered by the statute; as the president of a loan correspondent that originated FHA-insured loans, he was an officer connected with HUD. The statements on the 92900-A forms and the V-forms were certainly false statements, as Luce was a principal involved in a criminal proceeding at the time the certifications were made. Unlike the FCA, FIRREA conditions liability on intent to defraud or deceive. As noted *supra*, whether Luce had the requisite knowledge of the 92900-A forms is a disputed fact. Whether Luce had intent to submit false forms goes hand-in-hand with the knowledge inquiry. Thus, summary judgment is denied to both Luce and the government as to liability under FIRREA on the 92900-A forms.

Conversely, Luce personally signed the V-forms and had knowledge that he was making a false statement (despite his frivolous argument whether he "could" be convicted of an offense of which he believed himself innocent). A reasonable jury could infer that, because Luce was knowingly certifying a false statement, a statement which was a requirement for MDR to continue to operate as an FHA-approved loan correspondent, that Luce had the requisite intent to

deceive HUD. *See United States v. Ranum*, 96 F.3d 1020, 1028 (7th Cir. 1996) (inferring intent from actual knowledge of false information under § 1001 (another predicate offense for FIRREA liability)); *United States v. Beck*, 615 F.2d 441, 453 (7th Cir. 1980) ("Personal knowledge of the false information also satisfies the intent requirement [under § 1001].").

Luce knowingly made false statements on the V-forms with the intent to deceive HUD into certifying MDR as an FHA-approved loan correspondent. Because no reasonable jury could find for Luce on the FIRREA claims relating to the V-forms in 2006, 2007 and 2008, summary judgment is granted to the government on the FIRREA claims for the V-forms from 2006-2008.

The Complaint asserts FIRREA liability under 18 U.S.C. § 1014, in addition to § 1006. The government failed to present any evidence regarding 18 U.S.C. § 1014, however, or to respond to Luce's argument regarding § 1014. As such, the government has waived the issue and summary judgment is granted to Luce on all claims under § 1014. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [plaintiff has] done here—results in waiver.").

\*  \*  \*

Both the government and Luce failed to establish the lack of a material dispute of fact regarding Luce's knowledge of the 92900-A forms. Thus, both the government's and Luce's motions for summary judgment are denied as to liability on all of the 92900-A forms, under both the FCA and FIRREA. Conversely, Luce has failed to present evidence of a genuine issue for trial regarding the V-forms; Luce knowingly submitted false certifications on the V-forms with intent to deceive HUD. As such, the government's motion for summary judgment is granted as to liability for the V-forms for 2006-2008, under both the FCA and FIRREA. The government's motion as to liability for the V-forms for 2005 is denied, and Luce's motion for summary

judgment as to liability for the V-forms prior to January 30, 2007 and subsequent to February 25, 2008 is granted solely for 2005; as to the remaining time periods, Luce's motion is denied.

Dated: September 30, 2015

John J. Tharp, Jr.
United States District Judge