IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 05158 |
| | ) | |
| ROBERT S. LUCE | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The United States of America brought suit against Robert S. Luce, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* and the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a, for statements made in relation to loan applications submitted to the U.S. Department of Housing and Urban Development ("HUD") and the Federal Housing Administration ("FHA"). The statements were made on 92900-A forms submitted by MDR Mortgage Corporation ("MDR") (the company Luce founded and presided over) and on MDR's annual verification forms, "V-forms." This Court previously ruled on both parties' partial motions for summary judgment on liability, granting summary judgment to the government as to Luce's liability under the FCA and FIRREA for the false certifications on the V-forms for 2006, 2007, and 2008 and denying the motions for summary judgment with respect to the 92900-A forms. *See* Mem. Op., ECF No. 113. The government now moves for summary judgment on damages and penalties for defaulted loans insured during 2006-2008 (during which time Luce had false V-form certifications on file). Mot. Summ. J., ECF No. 122. For the following reasons, the motion is granted.

## BACKGROUND

This Court's Opinion granting summary judgment on liability discussed the factual background of this case in detail. *See* Mem. Op. 1-8. To briefly summarize, Luce is an attorney who founded a mortgage company, MDR, that served as a loan correspondent for HUD from 1993 through 2008. The majority of loans MDR processed were already insured by the FHA and were being refinanced into lower rate loans, although approximately 5% of MDR's business involved originating new FHA-insured loans. In order for MDR to be certified as a HUD/FHA approved loan correspondent, HUD required mortgagees to sign an annual verification form stating:

> I certify that none of the principals, owners, officers, directors and/or employees of the [loan correspondent] are currently involved in a proceeding and/or investigation that could result, or has resulted in a criminal conviction, debarment, limited denial of participation, suspension, or civil monetary penalty by a federal state or local government.

Mem. Op. 5.

In April 2005, Luce was indicted for wire fraud, mail fraud, making false statements, and obstruction of justice in connection with SEC violations that were unrelated to the operation of MDR. Nonetheless, Luce signed V-forms for MDR in 2006,[1] 2007, and 2008. Based on these false certifications, a prerequisite to MDR's participation in the HUD/FHA loan certification program, the Court found Luce liable under the FCA and FIRREA for damages associated with loans MDR insured from 2006 through August 7, 2008, the date Luce filed an amended V-form explaining the charges against him. *See id*. 12-22. This opinion addresses the government's resulting claim for damages.

---

[1] Luce continues to dispute his liability for the 2006 form. *See* Resp. 14-15. This Court found Luce liable for the 2006 form, *see* Mem. Op. 16-17, and will not revisit that conclusion.

Before discussing damages, however, it is necessary to return again to the question of the materiality of Luce's false V-form certifications. This Court's opinion on liability was released before the Supreme Court's decision in *Universal Healthcare Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). The parties submitted briefing on whether that decision or the Seventh Circuit's subsequent decision in *United States v. Sanford-Brown Ltd. et al.*, 840 F.3d 445 (7th Cir. 2016), should alter this Court's determination of liability. After consideration of those decisions, the Court reaffirms its finding of liability. The Supreme Court reiterated in *Escobar* that "[t]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," which is the standard this Court used in its decision. *Escobar*, 136 S. Ct. at 2002; *see* Order, Dkt. 118 at 1-2. Furthermore, this Court's decision was not based merely on whether the verification form was "labeled a condition of payment," but also considered the "likely or actual behavior of the recipient" – namely, that HUD did in fact debar Luce upon determining his certifications were false. *See Escobar*, 136 S. Ct. at 2001-2003; Order, Dkt. 118 at 2. *Compare Sanford–Brown*, 840 F.3d at 445 ("Here, Nelson has offered no evidence that the government's decision to pay SBC would likely or actually have been different had it known of SBC's alleged noncompliance with Title IV regulations. On the contrary, as previously noted, the subsidizing agency and other federal agencies in this case "have already examined SBC multiple times over and concluded that neither administrative penalties nor termination was warranted."). Given that the certification was required on both the V-forms and the individual loan forms, a reasonable person would "attach importance" to it. *See Escobar*, 136 S. Ct. at 2002-2003. In addition, as an attorney who had formerly worked at the SEC, Luce himself had reason to know the government attaches importance to criminal history in determining its course of action. *See id.* (explaining that

materiality may be based on either objective or subjective knowledge of the importance attached to the representation by the recipient).[2]

That is particularly so because the criminal history certification was a condition of program participation. Luce relies on *Escobar*'s holding that the classification of a program requirement as a condition of payment is not dispositive of the question of materiality. It is true enough that *Escobar* eschewed dispositively assessing materiality on the basis of whether a program requirement is expressly labeled as a condition of payment, but Luce fails to acknowledge the ***substantive*** distinction between a certification of compliance with requirements governing the terms of program participation—even if such compliance is expressly designated as a condition of payment—and a regulation like 24 C.F.R. § 202.5(j)(2), which affirmatively prohibits program participation by mortgagees who have a principal "indicted for, or convicted of, an offense" bearing on the mortgagee's integrity. That is not a condition of payment premised on whether the participant has performed in the prescribed manner; it is a condition of basic eligibility that, if not satisfied, bars program participation altogether. As such, the certification required on the V-Form cannot be considered—objectively or subjectively—to be immaterial. Whatever label one attaches to its required criminal history certification, there is no basis in logic or the evidence of record to support the view that HUD would have extended the FHA loans had it known of Luce's criminal history. Certainly Luce failed to adduce evidence to support any such conclusion.[3]

---

[2] Escobar also confirmed that materiality may be determined at summary judgement, as this Court did here. *See id*. at 2004, n. 6.

[3] Luce did not adduce evidence that HUD permitted mortgagees who did not meet these eligibility criteria to participate in the program. Instead, he pointed to the fact that HUD did not immediately suspend him from program participation upon learning that he had pleaded guilty to federal fraud charges. Rather than suspend him immediately, HUD promptly instituted

4

Luce also argues that *Escobar* requires a showing of proximate causation to sustain an FCA claim, but nothing in *Escobar* or *Sanford-Brown* discussed causation, much less overturned the longstanding Seventh Circuit rule that FCA violations require only a showing of "but for" causation. *See U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916 (7th Cir. 2005) ("If a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork."); *United States v. First National Bank of Cicero*, 957 F.2d 1362, 1374 (7th Cir. 1992) ("a demonstration that the government would not have guaranteed the loan "but for" the false statement is sufficient to establish the causal relationship between the false claim and the government's damages necessary to permit recovery under the False Claims Act").[4] Materiality and causation are different factors; the former considers the importance of a statement, and its likely effect; the latter the question of whether a harm experienced by the recipient of a material misstatement is appropriately attributed to that material misstatement. That *Escobar* clarified the criteria by which materiality is measured implies nothing at all about the appropriate standard of causation. In any event, it is not for this Court to determine whether Seventh Circuit precedent has been impliedly overruled by the Supreme Court. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree

---

debarment procedures. That on the way to shutting down Luce's business HUD extended more process to Luce than was necessarily due hardly supports an inference that HUD deemed Luce's false certifications to be immaterial.

[4] To the extent that Luce's argument about causation is really one about the degree of harm caused, that is a damages issue addressed later in this Opinion. *See United States ex rel. Miller v. Weston Educ., Inc.*, No. 14-1760, 2016 WL 6091099, at *6 (8th Cir. Oct. 19, 2016) ("To the extent Heritage asserts that its statements, even if false, did not cause any actual harm, this is not an element of materiality.").

with them, . . . so district judges must follow the decisions of this court whether or not they agree.") (internal citations omitted); *A Woman's Choice-E. Side Women's Clinic v. Newman*, 305 F.3d 684, 687 (7th Cir. 2002) ("only an express overruling relieves an inferior court of the duty to follow decisions on the books").

**DISCUSSION**

The government has moved for summary judgment on the amount of damages and penalties resulting from Luce's FCA and FIRREA violations. The government has identified 237 loans (11 new loans and 226 refinanced loans) that MDR processed between January 2006 and August 2008 that have since defaulted and have resulted in HUD/FHA paying insurance claims. To prevail on a summary judgment motion, the movant must demonstrate that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The "party opposing the motion for summary judgment must 'submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial.'" *Hakim v. Accenture U.S. Pension Plan,* 718 F.3d 675, 681 (7th Cir. 2013) (*citing Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted)).

**I.    False Claims Act**

The FCA provides liability for any person who "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1). A violator is liable for a civil penalty ranging from $5,500 to $11,000 per claim, "plus 3 times the amount of damages which the Government sustains." *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (*quoting* 31 U.S.C. § 3729(a)(1)(G)); *see also*

28 C.F.R. § 85.3(a)(9) (noting inflation adjustment for FCA penalties from $5,000 to $5,500 and from $10,000 to $11,000).

  A.  **Damages**

The government asserts that Luce is liable for losses it sustained related to defaulted mortgages that MDR certified during the time Luce had the false V-form certifications on file. Luce argues that he is not responsible for any damages based on the false certifications on the V-forms because the government has not established that such damages were foreseeable.[5]

The government argues that Luce forfeited the foreseeability argument by failing to raise it at the liability stage. Foreseeability, however, is generally part and parcel of the causation analysis, which Luce disputed in the prior summary judgment motion. *See* Luce Resp. 21-22, ECF No. 102. Regardless, the Seventh Circuit has rejected a limitation on damages under the FCA to those that were foreseeable. In *United States v. First National Bank of Cicero*, 957 F.2d 1362 (7th Cir. 1992), the court addressed the necessary causal relationship between the false statement and the government's damages under the FCA. The court rejected the Third Circuit's strict requirement that the false statement not only be the "but for" cause of the damages but also the proximate cause of the government's loss—*i.e.*, that the subject matter of the false statement cause the loss. *Id.* at 1373 (rejecting *United States v. Hibbs,* 568 F.2d 347 (3d Cir. 1977)); *see also* Dan B. Dobbs, et al., *The Law of Torts* § 413 n.2 (2d ed.) ("proximate cause issues . . . turn

---

[5] Luce relies upon a district court case from Massachusetts in reading a foreseeability requirement into the FCA. *See U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.*, No. CIV.A. 96-11651PBS, 2003 WL 22048255, at *5-6 (D. Mass. Aug. 22, 2003). This case discusses proximate causation in the context of whether the defendant could have foreseen that false claims would be submitted, not whether the resulting damages from those claims were foreseeable. While it can be difficult to distinguish causation of an act, itself, from the damages resulting from that act, in light of the Seventh Circuit's express rejection of the strict causation requirement in *First National Bank*, this Court does not read a foreseeability requirement into the damages analysis under the FCA.

7

ultimately on foreseeability"). Instead, the court held that the "because of" language in the FCA only required "but for" causation to support a damage award: "a demonstration that the government would not have guaranteed the loan 'but for' the false statement is sufficient to establish the causal relationship between the false claim and the government's damages necessary to permit recovery under the False Claims Act." *First Nat'l Bank*, 957 F.3d at 1374.[6]

As this Court previously explained, *see* Mem. Op. 21-22, but for Luce's false statement on the V-forms, MDR would not have been in the position to originate any loans through the FHA program. This is sufficient under the FCA to permit the government to recover damages on the defaulted loans that MDR certified while approved as a HUD/FHA correspondent pursuant to the false V-forms. Luce has not identified any disputed facts preventing summary judgment on the government's request for damages under the FCA.

As to the amount of damages, although the government's opening memorandum presented a method for calculating damages that differed from Luce's (and from its prior methods), the government has acquiesced to the use of Luce's method. *See* Reply 8-10, ECF No. 131. The loss for the 226 refinanced loans is the difference between the amount the FHA guaranteed on the original loans and the amount guaranteed upon MDR's refinancing of those loans. *See* Resp. 10-11; Reply 10. For the 11 new loans, the damages are the government's net losses. *See* Resp. 10; Reply 9; *see also United States v. Anchor Mortgage Corp.*, 711 F.3d 745, 749-50 (7th Cir. 2013) (FCA damages based on net loss). The respective amounts are presented

---

[6] Moreover, Luce falsely certified a prerequisite for his company's participation in the FHA program, a company whose entire business was certifying mortgages. It is not unreasonable for Luce, an experienced attorney, having practiced with the Securities and Exchange Commission enforcement division before entering a lengthy career in private practice, and with experience in the mortgage industry, to have foreseen that one or a number of the mortgages MDR originated would default and to have foreseen that the government would turn to the principal responsible for falsifying the company's certification when mortgages it originated defaulted.

8

in a chart attached to the government's response to Luce's Local Rule 56.1 Statement of Facts. *See* Gov. Resp. to Luce SOF, Ex. 2A, ECF No. 130-1. The total loss amount for the 237 loans is $3,452,499.23. Trebling the damages, as required per the FCA, *see* 31 U.S.C. § 3729(a)(1), Luce is liable for $10,357,497.69 in damages.

B. **Penalties**

The FCA also imposes a mandatory penalty per claim, ranging between $5,500 and $11,000. *See* 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.3(a)(9). The parties dispute the number of "claims" for which a penalty must be imposed: Luce asserts that the V-forms he signed are the only false "claims" for which a penalty can be imposed. Resp. 11-13. The government argues that each of the 237 loans originated during the 2006-2008 timeframe counts as a separate claim (and in its reply, argues for an additional three penalties for each V-form). Mem. in Supp. 7; Reply 10-11.

The Supreme Court has addressed how to determine the number of false "claims" when the defendant's acts did not directly involve the claim for payment made to the government. In *United States v. Bornstein*, 423 U.S. 303 (1976), the defendant (a subcontractor) sent three shipments of substandard tubes, falsely marked as meeting government specifications, to a supplier that had contracted with the government. *Id.* at 307. The supplier shipped the falsely marked tubes to the government and requested payment via 35 separate invoices. Although the government argued that the defendant caused the submission of 35 false claims, the Supreme Court focused on the defendant's acts, holding that the three shipments to the supplier were the three "claims" for which the defendant was liable under the FCA. *Id.* at 312-13 (rejecting government's argument that defendant "caused" the supplier to submit 35 false claims); *see also United States ex rel. Davis v. D.C.*, 34 F. Supp. 3d 30, 48-49 (D.D.C. 2014), *rev'd on other*

9

*grounds*, 793 F.3d 120 (D.C. Cir. 2015) (one "claim" for FCA penalty purposes based on defendant's submission of annual year-end report, not based on the 399,960 individual requests for payment).

The government argues that "'the number of violations of the False Claims Act depends on the number of false or fraudulent claims or other requests for payments that defendant caused to be submitted" [and] . . . 237 claims were submitted for defaulted loans." Mem. in Supp. 6-7 (quoting *United States v. Rogan*, 459 F. Supp. 2d 692, 720 (N.D. Ill. 2006), *aff'd*, 517 F.3d 449 (7th Cir. 2008)). Applying the reasoning of *Bornstein*, however, Luce's "acts" were to falsely certify three V-forms; those three forms did not cause a particular number of defaulted loans. *See Bornstein*, 423 U.S. at 312 (defendant "did not cause [supplier] to submit any particular number of false claims. The fact that [supplier] chose to submit 35 false claims instead of some other number was, so far as [defendant] was concerned, wholly irrelevant completely fortuitous"). Thus, the false "claims" for which Luce is subject to a penalty are limited to the three V-forms he signed and submitted.

Balancing the fact that Luce continued to falsely certify V-forms for a number of years with the fact that the mortgage defaults were not caused by the falsity of the certification, and the fact that the damages owed are already very substantial and beyond Luce's ability to pay,[7] the Court concludes that the minimum penalty of $5,500 per V-form is appropriate, for a total penalty of $16,500. Added to the damages, the total award for the FCA violations is $10,373,997.69.

---

[7] The parties dispute Luce's net worth: Luce asserts that his net worth is approximately $1.2 million. *See* Luce SOF ¶ 33, ECF No. 129. The government asserts that Luce's net worth is $2.9 million. *See* Gov. Resp. to Luce SOF ¶ 33, ECF No. 130. The difference is of no consequence with respect to Luce's ability to pay an additional penalty, considering the damage award for the FCA violations exceeds $10 million.

10

**II. FIRREA**

Title 18 U.S.C. § 1006 provides liability for a false statement made by "an officer, agent or employee of or connected in any capacity with" HUD, with intent to defraud or deceive HUD. A violation of § 1006 is one of the predicate offenses identified in section 951 of FIRREA, 12 U.S.C. § 1833a, which provides for civil penalties up to $1,000,000 per violation or, if the violation creates a pecuniary gain or results in a pecuniary loss, an award up to the amount of the gain or loss. In setting a penalty, the court may consider such factors as "(1) the good or bad faith of the defendant and the degree of his scienter; (2) the injury to the public, and whether the defendant's conduct created substantial loss or the risk of substantial loss to other persons; (3) the egregiousness of the violation; (4) the isolated or repeated nature of the violation; and (5) the defendant's financial condition and ability to pay." *United States v. Menendez*, No. CV 11-06313, 2013 WL 828926, at *5 (C.D. Cal. Mar. 6, 2013) (citing *Fed. Election Comm'n v. Furgatch,* 869 F.2d 1256, 1258 (9th Cir. 1989)).

This Court granted summary judgment to the government as to Luce's liability under FIRREA for the V-forms from 2006-2008. Mem. Op. 22-23. The government requests a civil penalty equal to the loss to HUD—$3,452,499.23—but that the award be reduced to zero based on Luce's inability to pay such a penalty. Unsurprisingly, Luce concurs that an appropriate penalty is zero. Because Luce would be unable to pay any amount (on top of the damages and penalty imposed under the FCA), the Court assesses a penalty of zero on the FIRREA violations.

\* \* \*

This Court already found Luce liable under the FCA for claims arising from mortgages MDR processed during 2006-2008, the time during which MDR operated pursuant to the false V-forms. Luce has failed to present evidence of a genuine issue for trial regarding the availability

11

or the amount of damages under the FCA or FIRREA based on the V-forms. Accordingly, the government's motion for summary judgment on damages and penalties is granted. The Court awards $10,357,497.69 in damages and $16,500 in penalties for the FCA violations and a penalty of zero for the FIRREA violations.

Dated: November 23, 2016

John J. Tharp, Jr.
United States District Judge