**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 CV 5158 |
| | ) | |
| ROBERT S. LUCE, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The United States brought this action against Robert S. Luce, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a. This lawsuit stems primarily from false statements made by Luce on annual verification forms submitted to the U.S. Department of Housing and Urban Development ("HUD") and the Federal Housing Administration ("FHA"). In two previous opinions, this Court first granted summary judgment in the government's favor as to Luce's liability under the FCA and FIRREA for the false certifications on the forms for 2006, 2007, and 2008, and then awarded $10,357,497.69 in damages and $16,500 in penalties for the FCA violations. On appeal, the Seventh Circuit reversed in part and remanded, and in the process it changed the standard for causation that applies to FCA claims. The parties have since conducted a supplemental round of briefing concerning the effect of the Seventh Circuit's decision. Now before the Court are the parties' cross-motions for summary judgment, as well as the government's motion to strike several of Luce's filings from this latest round of briefing. For the reasons that follow, all three motions are granted in part and denied in part.

## BACKGROUND

Given the various prior opinions by this Court and the Seventh Circuit in this matter, the Court assumes familiarity with the underlying facts and recounts only the central facts here. *See generally* Mem. Op. and Order ("Liability Op."), ECF No. 113; Mem. Op. and Order ("Damages Op."), ECF No. 142; *United States v. Luce*, 873 F.3d 999 (7th Cir. 2017). To summarize, Luce is an attorney who previously worked in the enforcement division of the Securities and Exchange Commission ("SEC"). He later started his own mortgage company, MDR Mortgage Corporation ("MDR"), and served as president of that company from its founding in 1993 until its closing in 2008.

During that time, MDR was a mortgage broker and loan correspondent for HUD and the FHA. As a loan correspondent, MDR could originate loans by sending loan applications to a HUD-approved direct endorsement sponsor mortgagee for underwriting approval prior to loan closing. The majority of loans that MDR processed were already insured by the FHA and were being refinanced into lower-rate loans, although roughly 5 percent of MDR's business involved originating new FHA-insured loans.

According to HUD regulations, mortgagees are ineligible to participate in the HUD/FHA mortgage insurance program if any of their officers, partners, directors, principals, managers, or supervisors are "indicted for, or convicted of, an offense that reflects adversely upon the integrity, competency, or fitness to meet the responsibilities of the lender or mortgagee to participate in the Title I or Title II programs." United States' Rule 56.1 Statement of Material Facts ¶ 34, ECF No. 87. To help ensure compliance with this rule, HUD requires mortgagees to provide a Yearly Verification Report (known as the "V-form") as part of their annual recertification. In that form, signatories must certify that "none of the principals, owners, officers, directors and/or employees of the [loan correspondent] are currently involved in a proceeding and/or investigation that could

result, or has resulted in a criminal conviction, debarment, limited denial of participation, suspension, or civil monetary penalty by a federal state or local government." *Id.* ¶ 35.

In April 2005, Luce was indicted for wire fraud, mail fraud, making false statements, and obstruction of justice. The violations at issue in that case were unconnected to the operation of MDR. Despite the fact of this indictment, Luce signed V-forms containing the certification quoted above on behalf of MDR in 2006, 2007, and 2008. The government brought this complaint against Luce in July 2011, alleging that in signing these forms, Luce had violated both the FCA and FIRREA.[1]

In September 2015, this Court granted summary judgment in the government's favor as to liability for the V-forms for 2006 to 2008, under both the FCA and FIRREA. The government subsequently moved for summary judgment on the issue of damages. This Court again granted summary judgment in the government's favor. This decision relied on this circuit's then-governing precedent, which at the time held that FCA violations required only a showing of "but-for" causation rather than proximate causation. *See* Damages Op. 5-6; *United States v. First Nat'l Bank of Cicero*, 957 F.2d 1362 (7th Cir. 1992), *overruled by Luce*, 873 F.3d 999. The Court awarded $10,357,497.69 in damages and $16,500 in penalties for the FCA violations. With respect to FIRREA, the government calculated a civil penalty due of $3,452,499.23, but requested that the award be reduced to zero based on Luce's inability to pay that penalty. Luce concurred in this request, and so the Court assessed no penalty for the FIRREA violations.

---

[1] The government also initially argued that Luce was liable for misstatements made by MDR on another type of form, the 92900-A form. Over the course of the litigation, however, the government abandoned any claims based on the 92900-A forms, and so those forms are not at issue in this opinion.

On appeal, Luce raised two primary arguments. First, he contended that his false V-form certifications were not material under the Supreme Court's decision in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). Second, he urged the Seventh Circuit to overrule *Cicero* and hold that FCA claims are to be addressed under proximate cause rather than but-for causation. The Seventh Circuit rejected Luce's first argument and approved of this Court's determination that Luce's false V-form certifications were material as a matter of law; however, it agreed with Luce on his second challenge. Accepting *Escobar* "as a catalyst," the court reconsidered its prior precedent and decided to "overrule *Cicero* and adopt the proximate cause standard for FCA cases." *Luce*, 873 F.3d at 1001, 1014. The court determined that the issue of whether the government could establish that Luce's falsehood was the proximate cause of the government's harm had not been adequately developed by the parties. Accordingly, it wrote that the "proper course" was "to remand this action to allow the district court to evaluate the evidence according to the new prevailing standard of proximate causation." *Id.* at 1014.

On remand, at a status hearing on February 8, 2018, the Court and the parties discussed how to proceed in light of the Seventh Circuit's decision. The Court's minute entry from that hearing stated: "The Government is to file a supplemental briefing on the issue of causation by 3/27/18. Defendant's response to that brief is due by 4/24/18; the government's reply is due by 5/15/18." Min. Entry 1, ECF No. 169. After the government filed its supplemental brief, Luce responded by filing a cross-motion for summary judgment, along with a combined brief in response to the government's supplemental brief and in support of his own cross-motion for summary judgment. Luce also filed a Local Rule 56.1 statement of facts, along with a series of exhibits. The government then filed a motion to strike, asking the Court to strike several of Luce's

filings, on the grounds that the Court had not granted leave for either party to file new motions or present new evidence to the Court.

## DISCUSSION

### I. Motion to Strike

At the status hearing on February 8, 2018, the Court stated that "we need to have supplemental briefing on the issue of causation predicated on the Seventh Circuit's ruling changing the applicable standard." Feb. 8, 2018 Hr'g Tr. 2:24–3:1, ECF No. 185. The Court added that "we're dealing with the summary judgment record already as it exists," and that "we have to revisit the legal argument of causation predicated on that," a point on which the attorneys for both parties agreed. *Id.* at 3:7-12. In light of the fact that the government had filed the initial motion for summary judgment that had been granted prior to the Seventh Circuit's ruling, the Court concluded that it was "appropriate" for the government "to open the briefing on the causation issue predicated on the new standard and then for the defendant to respond to that." *Id.* at 3:16-21. The minute entry from that hearing read as follows: "The Government is to file a supplemental briefing on the issue of causation by 3/27/18. Defendant's response to that brief is due by 4/24/18; the government's reply is due by 5/15/18." Min. Entry 1.

Each party objects to how the other side handled the briefing that followed. Luce argues that the government has violated both the Federal Rules of Civil Procedure and this district's Local Rules. The reason for this, Luce says, is that the government did not file either a motion for summary judgment or a Local Rule 56.1 statement in support of such a motion in this round of briefing. *See* Def.'s Combined Mem. in Resp. to the Government's Suppl. Summ. J. Brief and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Combined Mem.") 2, ECF No. 180. This is incorrect. What the Court called for in the February 8, 2018, status hearing was "supplemental briefing," based on "the summary judgment record already as it exists." Feb. 8, 2018 Hr'g Tr.

2:24–3:8. The government was not required to file a new motion for summary judgment—and not only was it not required to file a new Local Rule 56.1 statement, but it was specifically directed not to do so. In other words, the Court understands the government's motion for summary judgment from the previous round of briefing to still be before this Court. The supplemental brief filed by the government simply provides new arguments for why that motion should be granted, based on the law as articulated in the Seventh Circuit's opinion.

Having parried Luce's argument that it did not do enough, the government objects in turn that Luce did too much. It contends that this Court "did not grant leave for either party to file additional fact statements, conduct further discovery, submit new evidence, or file a new motion for summary judgment." United States' Mot. to Strike Def. Robert Luce's Mot. for Summ. J. and His Supporting Statement of Facts and New Evid. ¶ 4, ECF No. 188. Rather, the briefing schedule set by the Court provided for only three briefs: the government's initial filing, Luce's response, and the government's reply. *Id.* Instead of a single response, however, Luce filed a motion for summary judgment, a combined memorandum in response to the government's brief and supporting his own motion for summary judgment, a statement of facts, and a series of exhibits. The government has filed a motion asking the Court to strike these filings. Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." It is within a district court's discretion to strike a party's unauthorized filing. *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994).

The Court declines to strike Luce's motion for summary judgment and the portions of his combined memorandum in support of that motion. It is true that Luce was not expressly authorized to file such a motion—but neither was he forbidden from doing so. Luce was instructed to file a response to the government's supplemental brief. Nothing in the Court's instructions prohibited

Luce from asking for affirmative relief in that response. The Seventh Circuit's decision created new law that applies to the instant case. Luce takes the position that given the facts as previously developed and the law as clarified by the Seventh Circuit's opinion, he is entitled to summary judgment on the question whether he can be liable for any damages on the government's FCA claim. Luce is within his rights to make this argument. As he correctly points out, it would be a waste of judicial resources to require supplemental briefing on the issues of causation and damages but prevent Luce from asking for affirmative relief in the process. *See* Resp. in Opp'n to the Government's Mot. To Strike 2, ECF No. 194.

Luce's other filings, however, are another matter. The Court was crystal clear in the status hearing that "we're dealing with the summary judgment record already as it exists." Feb. 8, 2018 Hr'g Tr. 3:7-8. This should have been understood to prohibit either party from attempting to add to the factual record by placing new facts before this Court. In one of his filings, *see* ECF No. 176, Luce disregarded that instruction. That filing had two components. One of them consisted of a series of "additional facts" supporting Luce's cross-motion for summary judgment and denial of the government's motion for summary judgment. The other contained a series of "responses" to some of the government's statements, on the grounds that he had not had the opportunity to respond to those assertions in the previous round of briefing. Luce also included a series of exhibits, *see* ECF No. 176-1, in support of his cross-motion for summary judgment and his statements of facts. He states that all of these exhibits have previously been submitted to the Court, with one exception. That exception is a new declaration from Luce regarding the current state of his financial affairs, which is relevant to the issue of what penalties might be assessed against him.

Whatever the reasons for the new filings, Luce violated this Court's instructions. To the extent that Luce believed that there were factual assertions that he needed the opportunity to

respond to, the "proper response" would have been to seek leave from the Court to supplement the factual record. *See Cleveland*, 38 F.3d at 297. Luce did not do so. "One who decides to follow a schedule of his own devising, for reasons of his own invention, has no legitimate complaint when the tribunal adheres to the rules." *White v. Bentsen*, 31 F.3d 474, 476 (7th Cir. 1994).

Accordingly, the Court grants in part and denies in part the government's motion to strike. The Court denies the motion with respect to Luce's motion for summary judgment and his combined memorandum in response to the government's supplemental brief and in support of his own motion for summary judgment. It grants the motion, however, with respect to Luce's fact statements and supporting exhibits. Those filings will not be considered in evaluating the parties' cross-motions for summary judgment.

## II.     The Scope of the Remand

As discussed earlier, prior to the Seventh Circuit's decision in this case, this Court granted summary judgment in the government's favor as to liability for the V-forms for 2006 to 2008, under both the FCA and FIRREA. In its opinion on damages, the Court subsequently awarded $10,357,497.69 in damages and $16,500 in penalties for the FCA violations. As for FIRREA, the government requested a civil penalty of $3,452,499.23, but that the award be reduced to zero based on Luce's inability to pay that penalty. Luce agreed with this request, and so the Court assessed no penalty for the FIRREA violations.

On remand, the government has changed its tack. Perhaps sensing that the new proximate cause standard enunciated by the Seventh Circuit with respect to the FCA is a difficult one for it to meet, the government has requested that the Court enter a penalty of $3.3 million against Luce under FIRREA. This sum represents $1.1 million for each of the three violations—that is, for each of the three falsified V-forms. In the alternative, if the Court does not award a penalty under FIRREA, the government argues that it should impose damages of $10,357,497.69 under the FCA,

8

as calculated in this Court's previous opinion. Luce responds that the FIRREA issue has already been decided and cannot be revisited by this Court. He notes, correctly, that this Court imposed a penalty of zero under FIRREA in its previous judgment and that the government did not appeal this decision (which it had requested). In remanding this case, Luce argues, the Seventh Circuit left open only a single issue: whether the government can prove its FCA damages under the new proximate cause standard. In short, Luce argues that the issue of damages based on the FIRREA violations is not within the scope of the Seventh Circuit's remand.

When a court of appeals remands a case to a district court, it may issue either a general remand or a limited remand. A general remand is "the most common form of remand." *United States v. Simms*, 721 F.3d 850, 852 (7th Cir. 2013). In a general remand, "the appellate court returns the case to the trial court for further proceedings consistent with the appellate court's decision, but consistency with that decision is the only limitation imposed by the appellate court." *Id.* Under a limited remand, in contrast, "the appellate court returns the case to the trial court but with instructions to make a ruling or other determination on a specific issue or issues and do nothing else." *Id.* [2] When a remand is limited, the district court may not address issues outside of the scope of the remand. *See Pearson v. Edgar*, 153 F.3d 397, 405 (7th Cir. 1998) ("When a remand is limited to a specific purpose, the district court may not venture into other areas."); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("If the opinion identifies a discrete, particular error that can be corrected on remand without the need for a redetermination of other issues, the district court is limited to correcting that error."). There are two "major limitations" on the scope of a

---

[2] There is also an even more limited type of limited remand, in which "the appellate court seeks a ruling or advice from the trial court and pending its receipt of that ruling or advice retains jurisdiction over the appeal." *Simms*, 721 F.3d at 852. This case self-evidently does not fall within that category, as the Seventh Circuit has not retained jurisdiction over this case, and neither party has attempted to argue that it did.

remand: first, that "any issue that could have been but was not raised on appeal is waived and thus not remanded," and second, that "any issue conclusively decided by" the appellate court is not remanded. *United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002).

In the present case, Luce made two primary arguments on appeal: 1) that his false V-form certifications were not material, and 2) that the Seventh Circuit should depart from its "but-for" causation standard under the FCA. The panel rejected his first contention, writing that "[t]he district court did not err in finding that Mr. Luce's false certification on the V-form was material as a matter of law." *Luce*, 873 F.3d at 1009. The Seventh Circuit was persuaded by the second argument, however, and so it decided to "overrule *Cicero* and adopt the proximate cause standard for FCA cases." *Id.* at 1014. It then turned to the question whether the government could establish that Luce's falsehoods were the proximate cause of the government's harm. Because the Seventh Circuit determined that "this issue was not adequately developed by the parties," it concluded that the "proper course" was "to remand this action to allow the district court to evaluate the evidence according to the new prevailing standard of proximate causation." *Id.* It therefore reversed "in part" and remanded, concluding: "We reverse the district court's judgment with respect to causation and remand the case for further proceedings in conformity with this opinion." *Id.*[3]

Luce and the government disagree about whether to characterize the Seventh Circuit's decision as having issued a general or limited remand. Unsurprisingly, Luce argues that it was a limited remand, and the government contends that it was a general remand. Luce has the better of this argument. The Seventh Circuit identified a single issue in which this Court had made its ruling under the previous governing standard, and its decision changed the legal test that would apply in

---

[3] Elsewhere in the opinion, the Seventh Circuit wrote that "the judgment of the district court as to causation is reversed, and the case is remanded to afford the parties an opportunity to address the merits under the proximate cause standard." *Luce*, 873 F.3d at 1001.

that area. It reversed this Court's previous judgment only "in part" and only "with respect to causation." It is true, as the government points out, that the Seventh Circuit also wrote that the case was remanded "for further proceedings in conformity with this opinion"—language that can be indicative of a general remand. But, as the Seventh Circuit has previously cautioned, the question of what constitutes the scope of a remand "is determined not by formula, but by inference from the opinion as a whole." *Parker*, 101 F.3d at 528. Here, the opinion as a whole makes clear that the remand was "limited to a specific purpose." *Pearson*, 153 F.3d at 405. That purpose was to apply "the new prevailing standard of proximate causation" to the facts of this case.

The proximate cause standard enunciated by the Seventh Circuit applies only to the FCA; proximate cause is not required for liability under FIRREA. Luce's argument that the FIRREA issue is outside of the remand's limited scope is thus not without force. This case, however, presents a novel and unusual set of factual circumstances. The reason for this is that the issues of the FCA damages and the FIRREA penalty, respectively, are very much intertwined with one another. In the previous round of briefing before this Court, **both** of the parties, as well as this Court, operated under the assumption that there was a relationship between the FCA damages and the FIRREA penalty. The government specifically requested that Luce's FIRREA penalty be "reduced to $0 based on Luce's ability to pay" if the Court assessed significant damages against Luce under the FCA. Mem. in Supp. of the United States' Mot. for Summ. J. on Damages and Penalties 10, ECF No. 123. Just as importantly, Luce himself echoed this analysis in asking the Court to impose no penalty under FIRREA. *See* Def.'s Brief in Opp'n to the Government's Mot. for Summ. J. on Damages 13, ECF No. 128 ("The Government acknowledges that an appropriate FIRREA penalty, based on Mr. Luce's ability to pay, would be zero in this case. Mr. Luce agrees with that contention."). Finally, the Court explicitly adopted this logic as the reason for its

assessment of a $0 penalty. *See* Damages Op. 11 ("Because Luce would be unable to pay any amount (on top of the damages and penalty imposed under the FCA), the Court assesses a penalty of zero on the FIRREA violations.").

The Court concludes that the remand in this case was limited to addressing the effects of the Seventh Circuit's decision in changing the causation standard. This naturally includes addressing the question whether the government can demonstrate that Luce's misrepresentations proximately caused its losses for the purposes of assessing damages under the FCA. But it also includes addressing any other questions that follow directly from the adoption of this new standard, which is to say any decisions that relied on the Court's prior understanding of the causation standard. *Cf. Simms*, 721 F.3d at 853 (a remand vacating part of a sentence permits changes to the unchallenged portion of the sentence in view of the integration between the vacated and remaining portions of the sentence). Here, the issue of the FIRREA penalty falls under that umbrella. As the previous paragraph demonstrates, all of the parties understood that the FIRREA penalty was connected to the FCA damages. Indeed, both parties specifically invoked the presumed presence of large FCA damages as a central reason for imposing no penalty under FIRREA. The FCA damages, in turn, were awarded under the old understanding of the causation requirement. Because, as will be discussed later, *see infra* at 14-19, the government cannot meet the new proximate causation standard, the basis for the $0 FIRREA penalty has been undermined. It is, then, entirely consistent with the scope of the Seventh Circuit's limited remand to reconsider the question of the FIRREA penalty in the context of changes wrought by application of the proximate cause standard as to the FCA claim.

Luce relies heavily on *Pearson*, citing it as an analogous example of a situation where an issue fell outside of a limited remand, but that case is distinguishable. In *Pearson*, the Seventh

Circuit initially remanded the case "for consideration of the impact" of *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993), a then-recent Supreme Court decision concerning the First Amendment. *Pearson*, 153 F.3d at 405. It directed the district court to "conduct an evidentiary hearing to allow the parties to create the appropriate record for determining the constitutionality of Ill.Rev.Stat. ch. 38 7051(d) under the new standards set out by *Discovery Network*." *Id.* On remand, the district court addressed arguments relating to equal protection and vagueness. The Seventh Circuit determined that the district court had exceeded the scope of the remand, as *Discovery Network* "did not affect either of these areas of the law," and the district court "had no authority to revisit equal protection and vagueness." *Id.* As in *Pearson*, here the Seventh Circuit has remanded this case to consider the application of a new legal standard, and that standard applies to only one of the legal issues involved in the case. But the key difference is that here, there is an actual relationship between the subject at the center of the remand (the proximate cause standard for FCA damages) and the question of what penalty is appropriate under FIRREA. Moreover, the existence of that relationship was acknowledged by both parties in their previous briefing and relied upon by the Court in its earlier opinion. No such relationship existed in *Pearson* between the First Amendment inquiry and the equal protection or vagueness issues.

Nor, contrary to Luce's contentions, did the government waive this issue by failing to cross-appeal or raise this point before the Seventh Circuit. "A cross-appeal is appropriate only if a prevailing party seeks a judgment different from that rendered by the district court." *Weitzenkamp v. Unum Life Ins. Co. of America*, 661 F.3d 323, 332 (7th Cir. 2011). The government, however, ***did not*** seek to alter or amend this Court's previous judgment. This Court had entered the FIRREA

penalty amount that the government had asked for—namely, zero—based on its assessment of a sizable damages award under the FCA. There was nothing for the government to cross-appeal.[4]

It is important to understand the logic behind this result and the limits of this line of reasoning. The government could not reopen the FIRREA issue if Luce's ability to pay had happened to change for a separate, unrelated reason. For example, if Luce had won the lottery sometime after this Court entered its prior judgment, that would not have entitled the government to revisit the FIRREA issue merely because Luce now had a greater ability to pay. Rather, in this case, the FIRREA issue was briefed by the parties and decided by this Court on the presumption that a large FCA damages award would eliminate Luce's ability to pay any penalty under FIRREA. That FCA damages award was itself premised on a particular understanding of the standard for causation required to allow damages under that statute. Because it was the Seventh Circuit's decision in remanding the case that changed that standard and undermined the premise upon which the $0 FIRREA penalty was awarded, the FIRREA penalty falls within the scope of the remand.

## III. The FCA

Having addressed the scope of the remand, the Court's next task is to address whether either side is entitled to summary judgment on both the FCA claim and the FIRREA claim.[5] The FCA provides for liability for any person who "(A) knowingly presents, or causes to be presented,

---

[4] The Court also observes that a contrary approach would have the deleterious effect of encouraging the government to seek the maximum penalty possible on every issue in future cases, both in the trial court and on appeal, lest it otherwise waive the ability to seek such penalties in the event of a limited remand.

[5] A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court "construe[s] all facts and inferences in favor of the nonmoving party." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015).

a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1). A violator is liable for a civil penalty ranging from $5,500 to $11,000 per claim, "plus 3 times the amount of damages which the Government sustains." *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (quoting 31 U.S.C. § 3729(a)(1)(G)); *see also* 28 C.F.R. § 85.3(a)(9) (noting inflation adjustment for FCA penalties from $5,000 to $5,500 and from $10,000 to $11,000).

While the Court previously imposed a civil penalty of $16,500 under the FCA (representing $5,500 for each of the three V-forms), the government has not asked the Court to do so in this round of briefing. The government has, however, requested that the Court award FCA damages of $10,357,497.69, as it did in its prior opinion. *See* United States' Suppl. Mem. in Supp. of Its Mot. for Summ. J. on Damages and Penalties ("U.S. Suppl. Mem.") 14, ECF No. 170; United States' Reply in Supp. of Its Suppl. Brief on Its Mot. for Summ. J. on Damages and Penalties and Resp. to Def.'s Mot. for Summ. J. ("U.S. Reply") 15, ECF No. 186. The key question now is whether such damages may be awarded consistent with the new proximate cause standard announced in the Seventh Circuit's decision.

As the Seventh Circuit described it in this case, proximate cause has two elements: cause in fact and legal cause. To establish cause in fact, "the plaintiff must show the defendant's conduct was a material element and a substantial factor in bringing about the injury." *Luce*, 873 F.3d at 1012 (citation and internal quotation marks omitted). Legal cause "is essentially a question of foreseeability," and courts must determine "whether the injury is of a type that a reasonable person would see as a ***likely result*** of his or her conduct." *Id.* (citation and internal quotation marks omitted) (emphasis in original). Luce does not appear to contest that the element of cause in fact

15

was present in this case, but he argues that the government's losses were not reasonably foreseeable from his actions and thus that there was no legal cause.

This Court calculated the government's damages in its previous opinion based on the number of loans that MDR processed during the relevant time period that defaulted and resulted in the government having to pay insurance claims. *See* Damages Op. 6-9. The core of the government's FCA argument now is that these loan defaults were a foreseeable consequence of Luce's fraudulent conduct. The reason for the V-form requirement, the government says, is "to protect the Treasury from the risks of unscrupulous gatekeepers like Luce." U.S. Suppl. Mem. 11. The V-form is intended to screen out such untrustworthy gatekeepers, on the grounds that such individuals "are more likely to try to increase their profit at HUD's expense, by flouting HUD's limitations on endorsing loans and submitting riskier loans with a greater chance of default to HUD for insurance." *Id.* Citing cases dealing with both the FCA and other areas of law, the government contends that "where a defendant is found to have violated a gatekeeping regulation intended to protect the fiscal integrity of the program, the defendant proximately caused the full amount of the loss." *Id.* at 12.

The applicable case law, however, cannot be read to support this proposition. *United States v. Hibbs*, 568 F.2d 347 (3d Cir. 1977)—the case that announced the proximate cause standard for FCA lawsuits in the Third Circuit, and which was cited repeatedly by the Seventh Circuit in this case—is especially instructive. In *Hibbs*, the defendant, a real estate broker, filed certificates stating that the plumbing, electrical, and heating systems of six Philadelphia houses met the standards prescribed by HUD regulations. *Id.* at 349. This was false. The FHA insured mortgages secured by the houses. All six mortgages defaulted, and the government was required to make payments to honor its mortgage commitments. *See id.* The district court ruled for the government,

and awarded damages under the FCA. The Third Circuit vacated the judgment and remanded due to a lack of proximate causation. *See id.* at 352.

In so doing, the court specifically rejected an argument very similar to one the government makes in this case. The government in *Hibbs* had argued that "had Hibbs not furnished the false certification, it would not have insured the mortgage and therefore would not have been called upon to make any payment—***post hoc ergo propter hoc***."[6] *Id.* at 351 (emphasis in original). None of the defaults, however, were caused by or related to the false certifications. Indeed, the Third Circuit stressed, "precisely the same loss would have been suffered by the government had the certifications been accurate and truthful." *Id.* The fact that the defendant in *Hibbs* had violated a gatekeeping regulation was not enough to conclude that his false certifications had proximately caused the government's losses.

Rather, as Luce contends, the essence of the proximate cause requirement is that there must be some nexus between the type or nature of the action and the type or nature of the loss. *Cf. Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 61, 643 N.E.2d 734, 748 (1994) ("[W]hile a transaction may have been induced by a misrepresentation, proximate causation limits recovery to those damages which might foreseeably be expected to follow from the character of the misrepresentation itself.") (citation and internal quotation marks omitted). As the Seventh Circuit has explained with an apt analogy:

> The distinction between "but for" causation and actual legal responsibility for a plaintiff's loss is particularly well developed in securities cases, where it is known as the distinction between "transaction causation" and "loss causation." Suppose that an issuer of common stock misrepresents the qualifications or background of its principals, and if it had been truthful the plaintiff would not have bought any of the stock. The price of the stock then plummets, not because the truth is discovered but because of a collapse of the

---

[6] Latin for "after this, therefore because of this."

> market for the issuer's product wholly beyond the issuer's control.
> There is "transaction causation," because the plaintiff would not
> have bought the stock, and so would not have sustained the loss, had
> the defendant been truthful, but there is no "loss causation," because
> the kind of loss that occurred was not the kind that the disclosure
> requirement that the defendant violated was intended to prevent.

*Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 763 (7th Cir. 1998) (citations omitted).

The same holds true here; there is simply no nexus between false statements about the existence of a federal investigation (particularly one unrelated to the operation of Luce's mortgage business) and loan defaults. As this Court noted in its previous opinion on liability, "there is no contention or evidence in this matter that any of the loan defaults are attributable to any malfeasance or negligence on the part of MDR or Luce. So far as the record reveals, the loans that defaulted would have done so in any event." Liability Op. 7 n.8; *see also* Damages Op. 10 ("[T]he mortgage defaults were not caused by the falsity of the certification."). The government does not challenge this conclusion.

The cases cited by the government in which HUD incurred losses and other courts determined that proximate causation existed are easily distinguishable. In all of those cases, the false statements made had something to do with the soundness of the loans or the creditworthiness of borrowers. *See United States v. Americus Mortg. Corp.*, No. 4:12-CV-2676, 2017 WL 4083589, at *3 (S.D. Tex. Sept. 14, 2017) (defendants' underwriters "issued false statements regarding borrowers' creditworthiness" and those statements "increased the risk of default"); *United States v. Spicer*, 57 F.3d 1152, 1160 (D.C. Cir. 1995) (defendant "intentionally misrepresented buyers' down payments in order to induce HUD to approve FHA-insured mortgages for parties who otherwise would not qualify"); *United States v. Peterson*, 538 F.3d 1064, 1077 (9th Cir. 2008) (defendants provided down payment assistance and false gift letters to buyers, who otherwise would not have been eligible for FHA-insured mortgages). None of these cases support a finding

that Luce's false statements about the pendency of a government investigation proximately caused any defaults on the loans MDR processed. Those defaults were entirely independent of Luce's misstatements and would have occurred even if his statements had been true.

In short, the government has not cited any authority that supports the broad proposition it seeks to advance: that a defendant's failure to meet a gatekeeping requirement in this type of case is the proximate cause of all of the government's future losses. Nor has it provided any evidence that would support the conclusion that there was a sufficient nexus between Luce's misrepresentations and the government's losses to meet the requirements of proximate causation. The Court concludes, therefore, that as a matter of law, the government's losses were not proximately caused by Luce's V-form certifications. Since the Seventh Circuit has now held that proximate causation is required for an individual to be liable for damages under the FCA, Luce cannot be responsible for any such damages. The Court thus grants summary judgment in Luce's favor on the FCA issue.

## IV.    FIRREA

18 U.S.C. § 1006 provides for liability for a false statement made by "an officer, agent or employee of or connected in any capacity with" HUD, with intent to defraud or deceive HUD. A violation of § 1006 is one of the predicate offenses identified in 12 U.S.C. § 1833a, which is part of FIRREA and which provides for the imposition of civil penalties. In its previous opinions, this Court granted summary judgment in the government's favor as to Luce's liability under FIRREA for the V-forms from 2006 to 2008. Nothing in the Seventh Circuit's opinion disturbs this Court's prior finding with respect to Luce's liability under FIRREA. That is, it remains established that Luce personally signed the V-forms and, in so doing, knowingly made false statements with the intent to deceive HUD into certifying MDR as a loan correspondent. The Court thus reaffirms its grant of summary judgment in the government's favor on the issue of liability under FIRREA.

What remains to be decided is what penalty should be awarded, if any, for these FIRREA violations. This Court has already concluded that this issue falls within the scope of the remand. As noted above, in briefing the issue of a FIRREA penalty last time, both parties and this Court were operating under the assumption that a substantial damages award under the FCA would affect the proper FIRREA penalty level. Given that the Court is no longer awarding such damages under the FCA, it is appropriate for the Court to revisit the issue of what penalties should be assessed under FIRREA here.

12 U.S.C. § 1833a, as subsequently modified to adjust for inflation, *see* 28 C.F.R. § 85.3(a)(6), provides for a maximum penalty of $1.1 million for each violation of a series of specified statutes, including 18 U.S.C. § 1006.[7] Aside from setting this maximum limit, the statute does not prescribe a specific mechanism to be used in determining what penalty should be assessed in a particular case. There are a limited number of cases in which courts have been called upon to determine what is an appropriate FIRREA penalty. In such cases, these courts—including this Court in its previous opinion on damages, *see* Damages Op. 11—have looked to a range of factors, drawn from other contexts involving the assessment of civil penalties. These factors include:

> (1) the good or bad faith of the defendant and the degree of his scienter; (2) the injury to the public, and whether the defendant's conduct created substantial loss or the risk of substantial loss to other persons; (3) the egregiousness of the violation; (4) the isolated or repeated nature of the violation; and (5) the defendant's financial condition and ability to pay.

*United States v. Menendez*, No. CV 11-06313 MMM (JCGx), 2013 WL 828926, at *5 (C.D. Cal. Mar. 6, 2013); *see also United States v. Americus Mortg. Corp.*, No. 4:12-CV-2676, 2017 WL 4117347, at *7 (S.D. Tex. Sept. 14, 2017) (listing these same factors). The parties have also used

---

[7] There are certain special circumstances in which the penalty may exceed this amount, but they are not relevant to this case. *See* 12 U.S.C. § 1833a(b)(2)-(3).

these factors to guide their analysis in their briefing. The government asks this Court to impose a penalty of $3.3 million, representing the maximum penalty of $1.1 million for each of the three falsified V-forms. Luce responds that a far lower sum is appropriate, and that the government has not demonstrated that a penalty anywhere near the maximum amount is justified.

Based on these factors, the Court concludes that a significant penalty is warranted, but one that falls well short of the government's request. The first factor, dealing with the defendant's good or bad faith, points in favor of a substantial penalty. This Court has previously concluded that Luce "knowingly made false statements on the V-forms with the intent to deceive HUD into certifying MDR as an FHA-approved loan correspondent." Liability Op. 23. Luce does not contest that he acted with the requisite scienter to support liability under the statute. *See* Def.'s Combined Mem. 19. There is no possible explanation by which these false certifications could be chalked up to some kind of good-faith, honest mistake. This is especially true in light of Luce's history as an attorney and SEC enforcement lawyer, which demonstrates that Luce certainly should have been aware of the import of these statements.

The second factor, regarding the injury to the public and the loss or risk of loss created by the defendant's actions, points in both directions. The Court has already found that the loss to the government in this case was $3,452,499.23—a substantial sum.[8] *See* Damages Op. 8-9. The Court,

---

[8] Luce contends that he is not responsible for the government's losses stemming from loans approved after February 25, 2008, after the government learned of his conduct. *See* Def.'s Combined Mem. 17-18. Luce raised this issue in the context of contesting his liability for those damages under the FCA. While this issue would have been relevant to his FCA damages, the Court need not address it to resolve the question of what is an appropriate FIRREA penalty. The loss on those loans after trebling was $1,992,686.34, making the loss $664,228.78. *See Luce*, 873 F.3d at 1014 n.44. Even if the losses from these loans were not counted, the government's losses would still amount to $2,788,270.45. The Court still considers this amount to be a substantial sum that would weigh in favor of a significant FIRREA penalty, and it would assess the same penalty under either accounting of the government's losses.

as well as the Seventh Circuit, have both concluded previously that Luce's false statements were instrumental in leading to this loss. Indeed, they were a but-for cause of the loss, as MDR would not have been able to originate any loans in the absence of Luce's false statements. The V-form certification was a "threshold eligibility requirement" without which Luce or MDR "could not have originated a single mortgage." *Luce*, 873 F.3d at 1009. Nevertheless, as Luce has persuasively argued, the V-form certifications were not the ***proximate cause*** of the loss. While the certifications may have allowed the loans to take place, they were unconnected to the reasons why the loans actually defaulted.

The same is true of the third factor, the egregiousness of the violation, for similar reasons. In the government's favor, this was a blatant fraud committed by Luce that should have never taken place. The "false V-form certifications simply were not 'minor or insubstantial' violations." *Id.* at 1007 (quoting *Escobar*, 136 S. Ct. at 2003). Rather, "they were lies that addressed a foundational part of the Government's mortgage insurance regime, which was designed to avoid the systemic risk posed by unscrupulous loan originators." *Id.* The Court agrees with Luce, however, that Luce is not among the worst class of violators of the statute. *See U.S. Commodity Futures Trading Comm'n v. Capital Blu Mgmt., LLC*, No. 6:09-cv-508-Orl-28DAB, 2011 WL 2357629, at *7 (M.D. Fla. June 9, 2011) ("Proportionality is central in determining an appropriate monetary penalty—the most serious penalties should be reserved for the most serious offenders."). Again, Luce did not proximately cause any of the government's losses. He did not defraud any borrowers, nor did he make any false statements dealing with the soundness of any loans or the creditworthiness of borrowers.

With respect to the repeated or isolated nature of the violation, the parties agree that Luce committed three violations, as he submitted three falsified V-forms over the course of three years,

for 2006, 2007, and 2008. This is an aggravating factor, negating any argument that Luce's conduct represents an aberrational lapse of judgment rather than a calculated scheme to defraud the government.

Finally, the parties disagree over what Luce's net worth is for the purposes of determining his ability to pay. The government asserts that Luce's net worth is $2.9 million, and contends that this net worth plus the fact that he is a practicing attorney capable of earning a substantial income means that he has the ability to pay a large penalty. Luce, in contrast, argued during the previous round of briefing that his net worth was approximately $1.2 million,[9] and he contends that the fact that he is an attorney is not alone indicative of his current ability to pay. The government is the party moving for summary judgment as to both Luce's liability and damages under FIRREA. Because Luce's net worth is disputed, and because the Court must make all reasonable inferences in favor of the nonmoving party, the Court assumes for the purposes of this opinion that Luce's account of his net worth is correct.

Taking all of these factors into account, the Court concludes that an appropriate FIRREA penalty for Luce is $500,000. Half a million dollars is a substantial sum of money, and it reflects the seriousness of Luce's wrongdoing over a series of years, as well as the fact that there is no good-faith explanation for his actions. At the same time, it also reflects that Luce's conduct, while serious, does not put him within the worst class of FIRREA violators. Finally, $500,000 represents a significant percentage of Luce's net worth, but it is not completely outside of his means or ability to pay.

_____

[9] Luce now argues that his current net worth is roughly $1.1 million. *See* Def.'s Combined Mem. 21. For the reasons discussed above, however, *see supra* at 5-8, the Court has already stricken Luce's new statements of fact and rejected his attempt to add to the factual record. In any event, this Court would assess the same penalty under FIRREA whether Luce's net worth is considered to be $1.1 million or $1.2 million, so the difference is immaterial.

Luce argued in his briefing that if the Court assessed a penalty of $3.3 million under FIRREA, as the government requested, it would violate the Eighth Amendment's Excessive Fines Clause. *See* Def.'s Combined Mem. 22-23. It is questionable whether this argument would have succeeded even if the Court had granted the government's request in full, but it must certainly be rejected as applied against a penalty of $500,000. As the Supreme Court has put it, the Excessive Fines Clause requires that the amount of any fine "must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). This means that the fine will "violate[ ] the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* As Luce recognizes, the Seventh Circuit has interpreted *Bajakajian* and identified four factors that are relevant to the Excessive Fines Clause analysis: "(1) the nature of the defendant's crime and its connection to other criminal activity, (2) whether the criminal statute is principally meant to reach people like the defendant, (3) the maximum punishment that could have been imposed, and (4) the harm caused by defendant's conduct." *United States v. Abair*, 746 F.3d 260, 267 (7th Cir. 2014).

These factors point to the conclusion that a $500,000 penalty does not offend the Eighth Amendment. For one thing, Luce's conduct represents serious wrongdoing. He is exactly the type of person whom the statute is intended to cover, and his actions were exactly the sort of conduct that it was intended to reach. In addition, $500,000 is well short of the maximum penalty of the $3.3 million that could have been imposed under FIRREA for his three violations. *See Kelly v. U.S. E.P.A.*, 203 F.3d 519, 524 (7th Cir. 2000) ("[W]e can't say the fine is grossly disproportionate to the gravity of the offense when Congress has made a judgment about the appropriate punishment."). And finally, while Luce argues that no harm was really caused by his actions, this Court has already concluded that the government's losses were in the millions. It is true, as

discussed above, that Luce did not proximately cause those losses, but it remains established that his actions were a but-for cause of the loss. Taking all of these factors into account, the Court concludes that a $500,000 penalty is not grossly disproportional to the gravity of Luce's offense and thus is not a violation of the Excessive Fines Clause.

\*       \*       \*

To recap, the government's motion to strike is granted in part and denied in part. Luce's motion for summary judgment and the government's motion for summary judgment are also both granted in part and denied in part. Summary judgment is granted in Luce's favor on the FCA issue. Summary judgment is granted in the government's favor on the FIRREA issue, as to both liability and damages under FIRREA. The Court assesses a penalty of $500,000 against Luce for his FIRREA violations.

Dated: July 10, 2019

John J. Tharp, Jr.
United States District Judge